UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JESUS CHAVEZ FLORES,<br><br>                       Plaintiff,<br><br>      v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; THOMAS D. HOMAN, Deputy Director and Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement; BRYAN WILCOX, Director of the Seattle Field Office of U.S. Immigration and Customs Enforcement; WILLIAM PENALOZA, Assistant Field Office Director, Detention, Seattle Field Office of U.S. Immigration and Customs Enforcement; THE GEO GROUP, INC., a Florida corporation; LOWELL CLARK, Warden, Northwest Detention Center,<br><br>                       Defendants. | NO.<br><br>**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## I.  INTRODUCTION

1.  Plaintiff Jesus Chavez Flores ("Chavez"), an immigrant detainee at the Northwest Detention Center ("NWDC") in Tacoma, Washington, seeks declaratory and injunctive relief to

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 1

**American Civil Liberties Union of Washington Foundation**
901 5th Ave, Suite 630
Seattle, WA 98164
206-624-2184

address Defendants' on-going retaliation against him for exercising his First Amendment right to engage in peaceful protest of state action.

2. In early February 2018, over 120 immigrant detainees at NWDC engaged in a hunger strike to protest their conditions of confinement. Detainees sought to raise issues including the food they receive and the wage of one dollar per day paid to detainees for cooking, cleaning, and otherwise maintaining the center.[1]

3. Mr. Chavez participated in the hunger strike along with the other detainees in his unit, C-3.

4. Defendants, by and through their employees and agents at the NWDC, which Defendants operate and have exclusive control and authority over, accused Mr. Chavez of leading the hunger strike in his unit.

5. Minutes later, an NWDC guard physically assaulted Mr. Chavez and other detainees who participated in the hunger strike. The guard shoved detainees against the wall, choked one detainee, and punched Mr. Chavez in the eye.

6. Guards then imprisoned Mr. Chavez in an isolation unit on false disciplinary charges.

7. Mr. Chavez currently remains locked in the isolation unit, where he is permitted only one hour outside in a small "yard" by himself each day. He is allowed to shower only three times per week. He is handcuffed and shackled every time he leaves the isolation cell. He must

---

[1] Other suits have been filed against GEO to enforce state minimum wage laws on behalf of immigrant detainees at the NWDC. *See, e.g.*, *Washington v. GEO Group, Inc.*, No. 3:17-05806, 2017 WL 6034369 (W.D. Wash. Dec. 6, 2017); *cf. Menocal v. GEO Grp., Inc.*, No. 17-1125, 2018 WL 797165 (10th Cir. Feb. 9, 2018) (same challenge in Colorado). These underlying employment issues are not the subject of this Complaint.

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 2

**American Civil Liberties Union of Washington Foundation**
901 5th Ave, Suite 630
Seattle, WA 98164
206-624-2184

fill out written requests in English to go to the medical clinic or make phone calls, and receives no assistance from anyone, even though he speaks and writes only in Spanish.

8.     Mr. Chavez also continues to have difficulty opening his injured eye, cannot see properly out of that eye, and has been denied appropriate medical care for his injury—which may or may not have resulted in permanent damage and loss of vision.

9.     As a result of Defendants actions, Mr. Chavez has suffered serious irreparable injury and will continue to do so until and unless this Court grants relief. He has no adequate remedy at law.

## II.     PARTIES

10.    Plaintiff Jesus Chavez Flores is an immigrant held in civil detention under the custody of Immigration and Customs Enforcement ("ICE") at NWDC while he awaits adjudication of his immigration case. Mr. Chavez speaks and reads Spanish, and cannot speak or read English.

11.    Defendant Immigration and Customs Enforcement ("ICE") is a federal law enforcement agency within the Department of Homeland Security. ICE is responsible for the criminal and civil enforcement of the immigration laws, including the detention, incarceration and removal of immigrants. ICE discharges its responsibility for incarceration of immigrants by promulgating detention standards to be followed in the facilities in which immigrants are held pending removal hearings, and contracting with the government entities and private corporations that operate detention facilities, including NWDC. Enforcement and Removal Operations ("ERO"), a division of ICE, manages and oversees the immigration detention system. ICE also authorizes the placement of detainees in disciplinary segregation. ICE contracts with the GEO Group, Inc. to handle daily operations for NWDC.

12. Defendant Thomas D. Homan is the Principal Deputy Assistant Secretary of ICE. As Deputy Director and Senior Official Performing the Duties of the Director, Defendant Homan is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures.

13. Defendant Bryan Wilcox is the Field Officer Director for the Seattle Field Office of ICE. The Seattle Field Office is responsible for carrying out ICE's immigration detention and removal operations in Alaska, Oregon, and Washington State. As Director, Defendant Wilcox oversees the Seattle Field Office's functions and implementations of its detention standards.

14. Defendant William Penaloza is the Assistant Field Office Director for Detention in the Seattle Field Office of U.S. Immigration and Customs Enforcement.

15. Defendants Homan, Wilcox, and Penaloza are sued only in their official capacities.

16. Defendant GEO Group, Inc. ("GEO") is a corporation organized under the laws of the State of Florida and conducting regular business in the State of Washington, including operation of NWDC. GEO detains tens of thousands of immigrant detainees in the United States. In 2015, GEO received $ 326 million in revenue from ICE detention contracts nationwide. GEO owns and operates NWDC. Under the terms of a contract with ICE, GEO provides the facility, management, personnel, and services for a program of 24-hour supervision of immigrant detainees in ICE custody. ICE's contract provides that GEO guards may conduct conducts searches for contraband and may place detainees in its segregation units, with notification to and oversight by ICE.

17. Defendant Lowell Clark is Warden of the Northwest Detention Center. He operates NWDC for GEO. Upon information and belief, Clark is responsible for supervision of all GEO staff at the facility.

## II. JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §§ 2201 and 2202 (declaratory relief).

19. Venue is proper in the Western District of Washington under 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred, and continue to occur, in this District.

## III. FACTS

**A. Mr. Chavez and Other Detainees Are Choked, Punched, and Shoved by Guards After Engaging in a Peaceful Hunger Strike.**

20. On Wednesday, February 7, 2018, some of the detainees at NWDC began a hunger strike to protest conditions of confinement at the facility.

21. The next day, on February 8, 2018, after hearing that other units had begun a hunger strike, detainees in the C-3 unit joined the effort. Everyone in the unit participated in the hunger strike, which they began at lunchtime by refusing their meal trays.

22. A guard demanded that they eat and threatened to put them in a holding cell if they did not.

23. At the start of the strike, Mr. Chavez talked to another detainee about his reasons for participating in the strike. Mr. Chavez participated in the strike because of his concerns regarding the quality and quantity of the food received by detainees and the wage of one dollar per day paid to detainees to maintain the facility.

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF - 5

American Civil Liberties Union of
Washington Foundation
901 5th Ave, Suite 630
Seattle, WA 98164
206-624-2184

24. A guard (Guard #1) in the unit overheard him talking, told him to "shut up," and instructed him to come to the front of the unit. Mr. Chavez complied.

25. When the Captain entered the unit, he asked who was responsible for the strike. Guard #1 pointed at and said that Mr. Chavez was the leader of the hunger strike.

26. The Captain tried to take Mr. Chavez and another detainee, Mr. Orozco, who was interpreting for Mr. Chavez, outside of the unit.

27. The other detainees objected, and requested that the Captain talk with Mr. Chavez and Mr. Orozco inside the unit, explaining that they were all participants in the hunger strike.

28. Several additional guards entered the unit, including one guard known to be aggressive and abusive with detainees (Guard #2).

29. Guard #2 began to push and shove detainees near the entrance of the unit.

30. Guard #2 pushed Mr. Chavez.

31. Guard #2 also aggressively pushed a detainee against Benito Vasquez Sanchez, another detainee standing near the door. They were pushed so hard that Mr. Vasquez hit a phone station, injuring his right side.

32. Guard #2 then grabbed detainee Jose Mesino Garcia by the neck. He choked Mr. Mesino three times in a row.

33. After Guard #2 let go of Mr. Mesino, he punched Mr. Chavez with a closed fist in the left eye. Upon impact, Mr. Chavez bent over and tried to cover his eye with his hands.

34. Such use of force is specifically prohibited under ICE guidelines, which specify that choke holds, carotid control holds, and other neck restraints are specifically prohibited unless deadly force would be authorized, and that using force against a detainee offering no resistance is generally prohibited, unless both necessary and reasonable in the circumstances.

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 6

American Civil Liberties Union of Washington Foundation
901 5th Ave, Suite 630
Seattle, WA 98164
206-624-2184

35. The guards told Mr. Chavez and Mr. Orozco to "get out" of the unit. Mr. Orozco was in handcuffs. Mr. Chavez was afraid to exit the unit because Guard #2—who had just punched him—was nearby. Mr. Chavez agreed to move only after Guard #2 left the area.

36. Mr. Chavez was taken to the medical unit, where he was examined by a doctor, but only given over-the-counter pain medication. No other medical treatment was offered, even though he was in extreme pain.

37. After the exam, the captain spoke to Mr. Chavez and Mr. Orozco. The captain accused Chavez of being the leader of the hunger strike. Mr. Chavez explained that he was not the leader of the strike, and that everyone in the unit had decided to participate together.

38. The Captain and some guards then held a meeting with the other detainees in the C-3 Unit. The Captain told the detainees that if ICE found out about what had happened, there would be "more problems." The Captain told the detainees that there was no need to participate in a hunger strike because they could fill out "kites" to file their complaints. The detainees responded that they had used kites in the past, but did not receive responses.

39. Some detainees, including Mr. Chavez, continued to participate in the hunger strike after the assaults.

40. Some detainees did not continue the strike because the guards began to write down the names of those who refused food, and the detainees feared retaliation.

41. One guard told detainees that if they did not eat, it would negatively impact and prejudice their immigration cases.

42. The next morning, February 9, 2018, Mr. Chavez went to the medical unit again because he was unable to open his eye. He was given only ointment and eye drops.

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 7

**American Civil Liberties Union of Washington Foundation**
901 5th Ave, Suite 630
Seattle, WA 98164
206-624-2184

**B.  Mr. Chavez is Placed into Isolation on False Disciplinary Charges, Without Proper Procedural Protections.**

43. On Saturday, February 10, 2018, Mr. Chavez again returned to the medical unit because his vision was blurry and it was still difficult for him to open his eye.

44. He was examined by a different doctor than the day of his injury. She told him he should go to an offsite hospital for an eye examination.

45. However, the initial examining doctor denied the offsite hospital visit. Mr. Chavez returned to his unit.

46. When Mr. Chavez returned to his unit, he sat with some other detainees. A guard approached them and spoke in English to another detainee. The guard pointed to a box (locker) in the unit and asked whose it was. Benito responded that he did not know.

47. Approximately thirty minutes later, guards left copies of Evidence/Search Reports on each detainee's bed. The reports described any confiscated property taken from detainees after an inspection for contraband. Mr. Chavez's report, completed that day by guards at 2:45 p.m., indicated that he had nothing in his property that had been confiscated.

48. At 3:00 p.m., the guards changed shifts. Mr. Chavez was instructed by a guard to go to the doctor. Mr. Chavez went to the medical unit again, but was told that he did not need to be there and to return the following week. Mr. Chavez returned to Unit C-3, and informed the guard that he had been told not to go to the medical unit until the following week.

49. The guard told him to go back to the medical unit.

50. Mr. Chavez was then taken by guards to a small room, not the medical unit. A guard ("Guard #3") in the room asked him in Spanish, "when is the party going to be?" Mr. Chavez responded, "what party?"

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 8

American Civil Liberties Union of Washington Foundation
901 5th Ave, Suite 630
Seattle, WA 98164
206-624-2184

51. Guard #3 replied, "the party that you are preparing for after the strike, because regularly, after a hunger strike, they celebrate with wine." Mr. Chavez responded that he did not know what the guard was talking about.

52. Guard #3 showed Mr. Chavez a photo of a bag with apples and water in it, used to make alcohol. He informed Mr. Chavez that the bag had been found in his property.

53. Guard #3 told Mr. Chavez that he was being put into segregation.

54. Mr. Chavez informed Guard #3 that the bag was not his. He asked Guard #3 to review the cameras, which provide video surveillance of the residential unit.

55. Guard #3 gave Mr. Chavez an Administrative Detention Order, which stated that he was being placed into the Restrictive Housing Unit pending a charge for adulterating food and drink. The order was issued at 4:20 p.m.

56. Guard #3 also gave Mr. Chavez a Notice of Disciplinary Panel Hearing, which stated that he was being referred to the Unit Disciplinary Committee ("UDC") two days later, on February 12, 2018 at 11:00 a.m.

57. Detainees who are placed in administrative segregation must receive an order in a language the detainee can understand. Under ICE guidelines, all written materials provided to detainees must generally be translated into Spanish.

58. Detainees subject to discipline in ICE detention must first receive an Incident Report. An Incident Report may be forwarded to the UDC, which conducts hearings and may impose sanctions on detainees. Detainees in UDC proceedings have the right to a hearing within 24 hours after the conclusion of an investigation, to attend the entire hearing, or waive the right to appear. Detainees may present statements and evidence, including witness testimony on

his/her behalf, and to appeal the committee's determination through a grievance process. The UDC must serve a copy of its decision to the detainee.

59. The Incident Report, Administrative Detention Order, and Notice of Disciplinary Panel Hearing issued to Mr. Chavez were all only in English, not Spanish.

60. Guard #3 instructed Mr. Chavez that he would have a chance to talk with a judge from Defendant GEO who would decide if he should continue to be in segregation.

61. Mr. Chavez again asked Guard #3 to check the cameras.

62. The guards handcuffed Mr. Chavez, and placed him in segregation.

**C. Mr. Chavez is Placed in Disciplinary Segregation Without Due Process After the Tacoma Police Department Investigates NWDC Guards.**

63. Mr. Chavez has been in segregation since February 10, 2018.

64. Since February 10, 2018, Mr. Chavez has spent 23 hours a day in isolation, in a cell that only has a bed, a toilet, shelf, table, chair, and a sink.

65. Mr. Chavez has only been allowed to shower three times a week.

66. Mr. Chavez is prohibited from participating in any programming activities.

67. Guards informed Mr. Chavez that he would have a disciplinary hearing on Monday, February 12, 2018 regarding his status in segregation.

68. No one came to talk to Mr. Chavez on February 12, 2018. He did not waive the right to appear at this hearing.

69. On Wednesday, February 14, 2018, a police officer from the Tacoma Police Department interviewed Mr. Chavez at NWDC. His wife had called the Police Department to report Mr. Chavez's assault by Guard # 2. The police officer asked Mr. Chavez about what had happened that day. The officer also took a statement from NWDC guards regarding the incident.

70. A few hours after the police officer's visit, Mr. Chavez was informed that he would be placed in disciplinary segregation for 20 days.

71. Disciplinary segregation is a punitive form of solitary confinement, and is the most restrictive form of segregation in an ICE facility. A detainee may be placed in disciplinary segregation only by an order of the Institution Disciplinary Panel ("IDP"), which conducts formal hearings on Incident Reports referred by the UDC. Detainees must receive a copy of the UDC decision and written notification of charges and a hearing before the IDP. Detainees have the right to attend the entire IDP hearing, present statements and evidence, and appeal the committee's determination. A detainee may only be placed in disciplinary segregation after a hearing where the detainee has been found to have committed a prohibited act and only when alternative dispositions may inadequately regulate the detainee's behavior. The chair of the IDP must complete a written order, which must be immediately provided to the detainee in a language the detainee can understand. All written materials provided to detainees must generally be translated into Spanish.

72. Mr. Chavez was not provided with a copy of the UDC decision or given notice, formal or informal, of the IDP hearing. Because he did not know the hearing was taking place, he did not attend the hearing.

73. After the IDP hearing on February 14, 2018, Mr. Chavez was given a copy of an IDP Report. The report was issued in English, not Spanish. The report stated that he had been found guilty of violating Code Section 210: Adulteration of Food or Drink. The report indicates that no documentary evidence other than the incident report was considered. The report indicates that Mr. Chavez had requested video to be reviewed, but states that he "could not provide any potential date or time when somebody might have put items in box." At no time did anyone ask

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF - 11

American Civil Liberties Union of
Washington Foundation
901 5th Ave, Suite 630
Seattle, WA 98164
206-624-2184

Mr. Chavez about the date and time related to the video review he requested on February 10, 2018, the day of the incident.

74. The IDP Report stated that Mr. Chavez would be placed into disciplinary segregation for 20 days, with time served. He is not scheduled to be released from segregation until March 1, 2018.

75. The guards now handcuff both Mr. Chavez's hands and feet when he leaves the isolation cell, which they did not do previously, even though he does not have a history of being aggressive or violent. Mr. Chavez is the only detainee in the unit who has to follow that protocol.

76. On Thursday, February 15, 2018, Guard #2—the guard who assaulted Mr. Chavez—was assigned to bring him out of the isolation cell. Mr. Chavez did not want to come out because he was scared of the guard.

77. Mr. Chavez must fill out a form to request phone calls and medical attention. The form provided to him is only in English, and he has trouble filling it out because he does not speak English and because he still cannot see properly out of his injured eye. He was told that officers would review his requests and provide a response within two days.

78. The guards have not provided him with assistance in filling out the forms.

79. Even though he filled out a request to call his wife on February 16, 2018, as of February 20, 2018, Mr. Chavez has not received a response from officers.

80. Mr. Chavez is no longer participating in the hunger strike because he fears physical harm and further retribution, and does not want to get in further trouble.

81. Mr. Chavez has suffered serious irreparable injury as a direct result of Defendant's actions. He will continue to suffer irreparable harm every day he remains unlawfully in solitary confinement and every day Defendants refuse to provide him with

appropriate medical attention for his injured eye. Defendants undertook these actions in direct retaliation for Mr. Chavez's lawful and peaceful participation in classic First Amendment activity: a hunger strike to protest Defendants' management of the NWDC.

## IV. FIRST CAUSE OF ACTION: VIOLATION OF FREEDOM OF EXPRESSION

82. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-81 above as if fully set forth herein.

83. The First Amendment guarantees Plaintiff the right of freedom of speech and freedom of expression. Plaintiff exercised his right to these protected freedoms by engaging in a hunger strike to express his views about conditions of confinement at NWDC.

84. Defendants violated Plaintiff's right of freedom of speech and freedom of expression by assaulting him and placing him in solitary confinement in retaliation for his free speech activities.

85. Defendants' actions chilled Plaintiff's right to freedom of speech and expression.

86. Defendants' actions did not reasonably advance a legitimate institutional goal.

87. Plaintiff suffered, and continues to suffer, irreparable injuries as a result of Defendants' policies, practices, and omissions and is entitled to injunctive relief to avoid further injury.

## V. PRAYER FOR RELIEF

WHEREFORE Plaintiff requests judgment be entered against the Defendants as follows:

1. A temporary restraining order and preliminary relief enjoining the Defendants, their subordinates, agents, employees, and all others acting in concert with them from retaliating

against Plaintiff, including incarceration of the Plaintiff in segregation, solitary confinement, or isolation, based upon his engagement in free speech activities;

2. A permanent injunction prohibiting Defendants, their subordinates, agents, employees, and all others acting in concert with them from incarcerating Plaintiff, and those similarly situated, in segregation, solitary confinement, or isolation based upon engagement in free speech activities;

3. Declaratory judgment declaring that Defendants' policies, practices, acts, and omissions described in this Complaint violate Plaintiff's rights under the United States Constitution;

4. Leave to amend this complaint as needed and as required;

5. Costs and reasonable attorneys' fees in an amount to be proven at trial;

6. Interest on amounts authorized by law; and

7. Grant such further relief as the Court deems just and proper.


RESPECTFULLY SUBMITTED   _____, 2018.


AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION

By:   /s/Emily Chiang_____
Emily Chiang, WSBA No. 50517
echiang@aclu-wa.org
Eunice Hyunhye Cho,* GA Bar No. 632669
echo@aclu-wa.org
American Civil Liberties Union of Washington Foundation
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Tel: (206) 624-2184

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 14

**American Civil Liberties Union of Washington Foundation**
901 5th Ave, Suite 630
Seattle, WA 98164
206-624-2184

**Attorneys for Plaintiff**

*Motion for admission *pro hac vice* filed concurrently

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 15

**American Civil Liberties Union of Washington Foundation**
901 5th Ave, Suite 630
Seattle, WA 98164
206-624-2184