Honorable Judge Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESUS CHAVEZ FLORES,

Plaintiff,

v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; THOMAS D. HOMAN, Deputy Director and Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement; MARC J. MOORE, Director of the Seattle Field Office of U.S. Immigration and Customs Enforcement; BRYAN WILCOX, Deputy Director of the Seattle Field Office of U.S. Immigration and Customs Enforcement; WILLIAM PENALOZA, Assistant Field Office Director, Detention, Seattle Field Office of U.S. Immigration and Customs Enforcement; ICE DOES 1-10; THE GEO GROUP, INC., a Florida corporation; LOWELL CLARK, Warden, Northwest Detention Center; MICHAEL BEARDSLEY, Officer, Northwest Detention Center; LEROY PORTILLO, Captain, Northwest Detention Center; GEO DOES 1-10,

Defendants.

No. 3:18-cv-05139-BHS-DWC

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S COMPLAINT**

NOTED: April 13, 2018

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## I. INTRODUCTION

At the very outset of the case, GEO Group, Inc. and Lowell Clark (collectively, "GEO") seeks summary judgment in their favor. GEO argues that Mr. Chavez—a civil detainee confined at the Northwest Detention Center ("NWDC") who suffered retaliation and physical harm for protected First Amendment activities—should have judgment entered against him as a matter of law. GEO characterizes Mr. Chavez's complaint as "false" and insists there can be no violations where its staff simply "temporarily separate[ed]" Mr. Chavez from the population to "de-escalate a disturbance" and where Mr. Chavez manufactured his own eye injury. Dkt. No. 26 at p. 2-3. Prior to any discovery being obtained, GEO puts in a number of self-serving and untested declarations about how the events unfolded and, in short, asks the Court to take GEO's word for it.

This is not how summary judgment works. Under Federal Rule of Civil Procedure 56, the evidence is viewed in the light most favorable to Mr. Chavez—not GEO. Viewed in Mr. Chavez's favor, it is clear that disputed facts preclude summary judgment. And because Mr. Chavez does not bring a Section 1983 claim or seek damages under *Bivens*, GEO's argument that such relief is unavailable to Mr. Chavez is irrelevant.

## II. FACTUAL BACKGROUND

Mr. Chavez is a detainee at NWDC. Declaration of Jesus Chavez Flores ¶ 2. On February 8, 2018, Mr. Chavez, along with other detainees in his unit, began participating in a hunger strike to protest conditions of confinement, including food quality and quantity and payment for labor. Chavez Decl. at ¶ 3. After detainees began refusing food, a guard overheard Mr. Chavez discuss his participation in the food strike. The guard yelled at Mr. Chavez to "shut up" and instructed Mr. Chavez to approach him. *Id.* at ¶ 5.



LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Mr. Chavez did so. *Id.* at ¶ 6. A captain then asked the guard who was responsible for the hunger strike; the guard pinned responsibility on Mr. Chavez. *Id.* In fact, Mr. Chavez had not instigated the strike. *Id.* at ¶ 7.

Another guard, Officer Beardsley, who is known to hit and abuse detainees, entered the unit. *Id.* at ¶ 8. Officer Beardsley pushed Mr. Chavez and other detainees, and grabbed and choked another detainee around the neck. Mr. Beardsley then hit Mr. Chavez in the left eye, causing injury. *Id.* at ¶ 9; Mesino Garcia Decl., Dkt. No. 2-3 at ¶ 6; Vasquez Sanchez Decl., Dkt. No. 7 at ¶ 7.

Mr. Chavez continued to participate in the hunger strike, even though the guards took down the names of each detainee who refused his food and told those participating that their immigration cases would suffer as a result of the hunger strike. Chavez Decl. ¶ 15. The following day Mr. Chavez's eye was swollen and he had difficulty opening it. *Id.* at ¶ 16. He went to the medical unit and was given ointment. *Id.*

On February 10, 2018, Mr. Chavez again went to the medical unit. *Id.* at ¶ 17. Later that afternoon, he was told by a guard that he needed to go to the medical unit yet again. However, when Mr. Chavez arrived to the medical unit, he was told that he did not in fact need to be there. *Id.* at ¶ 20. Mr. Chavez reported this to the guard, who grabbed a phone and told Mr. Chavez he should return to the medical unit. *Id.* at ¶ 21.

At this point, Mr. Chavez was led into a small room and an officer asked him when the "party" to celebrate the end of the hunger strike, with wine, would be held. *Id.* at ¶ 22. Mr. Chavez responded that he did not know what the guard was talking about. *Id.* The guard then showed Mr. Chavez a photograph of a bag of fermenting apples, and told Mr. Chavez he was being sent to segregation because contraband had been found in

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

his property. *Id.* Mr. Chavez immediately explained that the apples were not his, and told the guard to check the video cameras to confirm. *Id.* at ¶ 23. In fact, Mr. Chavez had earlier received an inspection form stating that no contraband had been found in his property. *Id.* at ¶ 19. Nevertheless, Mr. Chavez was handcuffed and placed in solitary confinement for all but one hour per day. *Id.* at ¶ 26.

Mr. Chavez stopped participating in the hunger strike because he did not want to risk further unmerited punishment. *Id.* at ¶ 34. After his release from segregation on March 1, 2018, he was reclassified to a higher security level and transferred to another unit. *Id.* at ¶ 32. He believes he was hit in the eye and put in segregation because he participated in the hunger strike, and faced further retaliation in segregation after the Tacoma Police Department came to investigate the incident involving his eye. *Id.* at ¶ 35.

## III. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party carries the burden of demonstrating that no genuine issues of fact exist. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). The Court will "view the evidence in the light most favorable to the nonmoving party … and draw all reasonable inferences in that party's favor." *Krechman v. County of Riverside*, 723 F.3d 1104, 1108 n.1 (9th Cir. 2013) (quoting *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009)).

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## IV. ARGUMENT

### A. GEO's Motion is Moot as the Complaint Has Been Amended

As an initial matter, GEO's motion is now moot to the extent it seeks summary judgment dismissal of the entire complaint, because Mr. Chavez has amended his complaint to raise new claims based on state law. None of GEO's arguments have any bearing on these new claims, which should proceed.

### B. Summary Judgment Is Not Warranted on the First Amendment Claim

GEO contends that summary judgment on the First Amendment claim is warranted for three reasons, none of which have merit.

*First*, GEO notes that it is not liable under 42 U.S.C. § 1983. But Mr. Chavez does not raise a claim under Section 1983, nor, as a *federal* detainee, would he do so. *See* 42 U.S.C. § 1983 (only those acting "under color of … [the law] of any *State or Territory or the District of Columbia*" may be liable) (emphasis added).

*Second*, GEO claims that Mr. Chavez lacks an implied private action for damages under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). But Mr. Chavez does not seek damages and is not attempting to proceed under *Bivens*. Instead, he seeks injunctive and declaratory relief. The Supreme Court, in holding that federal prisoners had no implied private right of action pursuant to *Bivens* against private correctional facilities, explained that such plaintiffs could instead pursue "suits in federal court for injunctive relief." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("[U]nlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally."). Similarly, an injunction may be

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

pursued against Mr. Lowell. *See, e.g.*, *Hernandez v. Dixon*, No. 5:12-cv-00070-BG ECF, 2012 WL 6839329, at *2 (N.D. Tex. Dec. 12, 2012) (holding that the warden employed by a private prison operating under contract with the Bureau of Prisons could be sued for injunctive relief).

*Finally*, GEO argues that Mr. Chavez's action must fail because there was no First Amendment conduct and no retaliation for such (non-existent) conduct. According to GEO, Mr. Chavez was rightfully disciplined for possessing contraband. The Court should reject GEO's argument, which depends on viewing the evidence in GEO's favor and disregarding Mr. Chavez's disputed issues of material fact.

At the very least, Mr. Chavez raises an issue of fact as to whether the hunger strike was protected expression because it was intended to convey the detainees' dissatisfaction with conditions and whether it succeeded in conveying that message of protest. Chavez Decl. ¶¶ 3-7. To the extent the hunger strike amounted to protest, it is protected First Amendment expression. *See, e.g.*, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505 (1969) (wearing an armband for the purpose of expressing certain views is "the type of symbolic act that is within the Free Speech Clause of the First Amendment"); *Stefanoff v. Hays Cnty.*, 154 F.3d 523, 527 (5th Cir. 1998) ("[A] hunger strike may be protected by the First Amendment if it was intended to convey a particularized message."); *Dumbrique v. Brunner*, No. 14-CV-02598-HSG, 2016 WL 3268875, at *7 (N.D. Cal. June 15, 2016) ("A hunger strike that is intended to convey a particularized message and has a high likelihood of conveying that message is therefore speech protected by the First Amendment.").

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

And viewing the facts in the light most favorable to Mr. Chavez, there is—at the very least—factual issues as to whether his eye injury and placement in segregation constituted retaliation based on his protected expression. Mr. Chavez testifies that the contraband was not his. Chavez Decl. ¶ 23. Furthermore, the timing surrounding its discovery was suspicious. A guard had accused Mr. Chavez of instigating the hunger strike, and the guards used intimidation to dissuade others from participating. *Id.* at ¶¶ 6, 15 ("The guards told us that if we did not eat, it would prejudice our immigration cases."). Mr. Chavez was then told that he was supposed to go to the medical unit, but when he arrived he was told he did not need to be there. *Id.* at ¶ 20. When he got back, he was confronted with a photograph of the supposed contraband. *Id.* at ¶ 22. When these facts are viewed in Mr. Chavez's favor, it appears that Mr. Chavez was sent to the medical unit on false pretext to allow a guard to plant contraband in his cell and thereby segregate him from the rest of the detainees. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal."). GEO's claim that the injury was accidental and his segregation justified is controverted by Mr. Chavez's evidence, and the Court cannot resolve these disputed factual issues on summary judgment.

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## V. CONCLUSION

In sum, Mr. Chavez's claim seeking injunctive and declaratory relief based on disputed material facts should not be dismissed on summary judgment. Additionally, the new claims raised in the first amended complaint should proceed.

DATED this 9th day of April, 2018.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION

By: */s/Emily Chiang*
Emily Chiang, WSBA No. 50517
echiang@aclu-wa.org
Eunice Hyunhye Cho,* GA Bar No. 632669
echo@aclu-wa.org
Antoinette M. Davis, WSBA # 29821
tdavis@aclu-wa.org
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Tel: (206) 624-2184

McNAUL EBEL NAWROT & HELGREN, PLLC

Daniel M. Weiskopf, WSBA #44941
dweiskopf@mcnaul.com
Theresa Demonte, WSBA#43994
tdemonte@mcnaul.com
600 University Street, Suite 2700
Seattle, Washington 98101
Tel: (206) 467-1816

*Admitted *pro hac vice*

*Attorneys for Plaintiff Jesus Chavez Flores*

PL.'S OPP'N TO MOT. FOR SUMM. J. DISMISSAL OF PL.'S COMPL. (3:18-cv-05139-BHS-DWC) – Page 7

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**DECLARATION OF SERVICE**

On April 9, 2018, I caused to be served a true and correct copy of the foregoing document upon counsel of record, at the address stated below, via the method of service indicated:

| | |
|---|---|
| Antoinette Marie Davis<br>Eunice Cho<br>Emily Chiang<br>ACLU of Washington<br>901 Fifth Ave., Suite 630<br>Seattle, WA 98164<br>Email: tdavis@aclu-wa.org<br>echo@ aclu-wa.org<br>echiang@aclu-wa.org<br>*Attorneys for Plaintiff* | ☐ Via Messenger<br>☐ Via U.S. Mail<br>☐ Via Overnight Delivery<br>☐ Via Facsimile<br>☑ Via E-mail |
| Sarah K. Morehead<br>US Attorney's Office (SEA)<br>700 Stewart St., Suite 5220<br>Seattle, WA 98101-1271<br>Email: sarah.morehead@usdoj.gov<br>*Attorney for United States Immigration and Customs Enforcement, Thomas D. Homan, Bryan Wilcox and William Penaloza* | ☐ Via Messenger<br>☐ Via U.S. Mail<br>☐ Via Overnight Delivery<br>☐ Via Facsimile<br>☑ Via E-mail |
| Joan K. Mell<br>III Branches Law PLLC<br>1019 Regents Blvd., Suite 204<br>Fircrest, WA 98466<br>Email: joan@3brancheslaw.com<br>*Attorney for The GEO Group, Inc. and Lowell Clark* | ☐ Via Messenger<br>☐ Via U.S. Mail<br>☐ Via Overnight Delivery<br>☐ Via Facsimile<br>☑ Via E-mail |

I declare under penalty of perjury under the laws of the United States of America and the State of Washington that the foregoing is true and correct.

DATED this 9th day of April, 2018, at Seattle, Washington.

I'sha Willis, *Legal Assistant*

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816