Honorable Judge Benjamin H. Settle
Honorable David W. Christel

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JESUS CHAVEZ FLORES,<br><br>                      Plaintiff,<br><br>      v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>                      Defendants. | NO. 3:18-cv-05139-BSH-DWC<br><br>**PLAINTIFF'S RESPONSE TO ICE DEFENDANTS' MOTION TO DISMISS – ORAL ARGUMENT REQUESTED**<br><br>Note on Motion Calendar:<br>May 25, 2018 |

## I. <u>INTRODUCTION</u>

Plaintiff Jesus Chavez Flores ("Chavez") is a civil immigrant detainee in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Northwest Detention Center ("NWDC") in Tacoma, Washington. Mr. Chavez is in ICE's custody as he awaits adjudication of his immigration case. He seeks declaratory and injunctive relief against Defendants ICE, Thomas D. Homan, Marc Moore, Bryan Wilcox, William Penaloza, and "ICE Does" in their official capacity (collectively "ICE Defendants").

ICE Defendants improperly retaliated against Mr. Chavez for his participation in a peaceful hunger strike protesting the conditions of custody at NWDC. Minutes after Mr. Chavez was incorrectly identified as the leader of the strike, a NWDC officer assaulted Mr. Chavez and

PL.'S RESPONSE TO ICE DEF.'S MOTION
TO DISMISS - 1

**American Civil Liberties Union
of Washington**
901 5th Ave., Suite 630
Seattle, WA 98164
206-624-2184

other detainees who participated in the hunger strike. The officer shoved several detainees, including Mr. Chavez, against a wall, choked another detainee, and punched Mr. Chavez in the eye. Mr. Chavez was soon after placed in segregation ("solitary confinement") on false disciplinary charges for twenty days. Upon review of the assault and Mr. Chavez's alleged role in the hunger strike, ICE's Assistant Field Office Director of Detention determined that the NWDC officer's use of force was "appropriate" because Mr. Chavez's "own actions created the opportunity for his eye to accidentally be poked." Two days later, an ICE officer authorized Mr. Chavez's placement in solitary confinement for twenty days on false disciplinary charges.

Mr. Chavez now seeks redress for violation of his First Amendment right to free speech. He alleges that ICE Defendants improperly retaliated against him by placing him in solitary confinement for peacefully exercising his First Amendment rights. ICE Defendants, however, seek to dismiss Mr. Chavez's case, arguing that this Court lacks subject matter jurisdiction on the basis of sovereign immunity. ICE Defendants also argue that Mr. Chavez has failed to allege sufficient facts to show that they engaged in conduct resulting in a First Amendment violation. They further argue that Mr. Chavez is not entitled to the declaratory and injunctive relief that he seeks.

The Court should deny ICE's motion and permit Mr. Chavez to file his Second Amended Complaint. Contrary to ICE's arguments, the government has waived sovereign immunity under the Administrative Procedure Act, 5 U.S.C. § 702. Through his Second Amended Complaint, Mr. Chavez has alleged clearly articulable facts establishing the ICE Defendants' improper retaliation in violation of the First Amendment. He has further clarified his request for injunctive and declaratory relief.

## II. FACTUAL BACKGROUND

Mr. Chavez is an immigrant detainee in ICE's custody at NWDC. Dkt. No. 32, Decl. of Jesus Chavez Flores at ¶ 2 ("Chavez Decl."); Dkt. No. 45, Proposed Second Am. Compl. ¶ 10.

PL.'S RESPONSE TO ICE DEF.'S MOTION
TO DISMISS - 2

**American Civil Liberties Union of Washington**
901 5th Ave., Suite 630
Seattle, WA 98164
206-624-2184

On February 8, 2018, Mr. Chavez, along with other detainees in his unit, participated in a hunger strike to protest the conditions of his custody, including food quality and quantity, and payment of one dollar a day for a full day's work to maintain the facility. Chavez Decl. at ¶ 3. After detainees began refusing food, a guard overheard Mr. Chavez discuss his participation in the hunger strike. The guard yelled at Mr. Chavez to "shut up," and instructed Mr. Chavez to approach him. *Id.* at ¶ 5. Mr. Chavez did so. *Id.* at ¶ 6. A captain then asked the guard who was responsible for the hunger strike; the guard pinned responsibility on Mr. Chavez. *Id.* In fact, Mr. Chavez had not instigated the strike. *Id.* at ¶ 7.

Another guard, Officer Beardsley, who is known to hit and abuse detainees, entered the unit. *Id.* at ¶ 8. Mr. Beardsley pushed Mr. Chavez and other detainees and grabbed and choked another detainee around the neck. Mr. Beardsley then hit Mr. Chavez in the left eye, causing injury. *Id.* at ¶ 9; Dkt. No. 2-3, Mesino Garcia Decl. at ¶ 6; Dkt. No. 7, Vasquez Sanchez Decl. at ¶ 7.

Mr. Chavez continued to participate in the hunger strike, even though the guards took down the names of each detainee who refused his food and told those participating that their immigration cases would suffer as a result of the hunger strike. Chavez Decl. ¶ 15. The following day Mr. Chavez's eye was swollen and he had difficulty opening it. *Id.* at ¶ 16. He went to the medical unit and was given ointment and eye drops. *Id.*

On February 10, 2018, Mr. Chavez again went to the medical unit. *Id.* at ¶ 17. Later that afternoon, he was told by a guard that he needed to go to the medical unit yet again. However, when Mr. Chavez arrived at the medical unit, he was told that he did not in fact need to be there. *Id*. at ¶ 20. Mr. Chavez returned to his residential unit and reported this to the guard, who grabbed a phone and told Mr. Chavez he should return to the medical unit. *Id*. at ¶ 21.

At this point, Mr. Chavez was led into a small room, which was not the medical unit. In the room, an officer asked him when the "party" to celebrate the end of the hunger strike, with

PL.'S RESPONSE TO ICE DEF.'S MOTION
TO DISMISS - 3

**American Civil Liberties Union
of Washington**
901 5th Ave., Suite 630
Seattle, WA 98164
206-624-2184

wine, would be held. *Id.* at ¶ 22. Mr. Chavez responded that he did not know what the guard was talking about. *Id.* The guard then showed Mr. Chavez a photograph of a bag of fermenting apples, and told Mr. Chavez he was being sent to segregation because contraband was found in his property. *Id.* Mr. Chavez immediately explained that the apples were not his, and told the guard to check the video cameras to confirm. *Id.* at ¶ 23. Nevertheless, Mr. Chavez was handcuffed and placed in isolation, for all but one hour per day. *Id.* at ¶ 26.

Guards provided Mr. Chavez with an Incident Report, an Administrative Detention Order, and a Notice of Disciplinary Panel Hearing. Dkt. No. 2-2, Cho Decl. Ex. E at 5 (Incident Report); Dkt. No. 2-1, Chavez First Decl. Ex. B at 16 (Notice of Disciplinary Panel Hearing); Dkt. No. 2-1, Chavez First Decl. Ex. H at 18 (Admin. Det. Order). The Notice of Disciplinary Panel Hearing stated that he would be referred to a hearing by the Unit Disciplinary Committee ("UDC") on February 12, 2018. Notice of Disciplinary Hr'g at 16. Detainees in UDC proceedings have the right to attend their entire hearing, or waive the right to appear. Dkt. No. 2-2, Cho Decl. Ex. J at 50 (Performance Based National Detention Standards ("PBNDS") 3.1(V)(F)). Although detainees must be advised of their rights in writing in a language they understand, and although Mr. Chavez understands only Spanish, all of these documents were in English. PBNDS 3.1 at 45 (PBNDS 3.1(II)(8)); Chavez Decl. at ¶ 7; *see* Incident Report, Admin. Detention Order, Notice of Disciplinary Hr'g.

A UDC disciplinary hearing for Mr. Chavez was held on February 12, 2018. Dkt. No. 2-2, Cho Decl. Ex. F at 7 (Inst. Disciplinary Panel Report). Mr. Chavez did not waive his right to appear at this hearing. Dkt. No. 30, First Am Compl. at ¶ 77; Dkt. No. 45, Proposed Second Am. Compl. at ¶ 84. However, on the day of the hearing, no one came to talk to Mr. Chavez, who remained in solitary confinement in the administrative segregation unit. *Id.* On the same day, February 12, 2018, ICE and GEO officials together reviewed Officer Beardsley's use of force against Mr. Chavez. ICE Assistant Field Office Director Drew Bostock, ICE Health Service

PL.'S RESPONSE TO ICE DEF.'S MOTION
TO DISMISS - 4

**American Civil Liberties Union of Washington**
901 5th Ave., Suite 630
Seattle, WA 98164
206-624-2184

Corps Administrator Jennifer Nussbaum, NWDC Warden Lowell Clark, Captain LeRoy Portillo, and an administrative assistant conducted their After Action Review of the use of force against Mr. Chavez. Dkt. No. 25, Mell Decl. Ex. A at 6-7. The Review noted that Mr. Chavez had "instructed detainees to refuse their lunch trays," and concluded that Defendant Beardsley's use of force was "appropriate" and was "carried out in a professional manner" because Mr. Chavez's "own actions created the opportunity for his eye to accidentally be poked." *Id.*

Mr. Chavez remained in solitary confinement. On February 14, 2014, in response to a report from Mr. Chavez's wife, the Tacoma Police Department came to NWDC and interviewed Mr. Chavez about his assault. Chavez Decl. at ¶ 28. That same day, ICE and GEO officials held an Institution Disciplinary Panel ("IDP") hearing for Mr. Chavez. Inst. Disciplinary Panel Report at 8. A detainee may be placed into lengthy solitary confinement in disciplinary segregation only by order of an IDP. Although detainees must receive a copy of disciplinary charges and notice of the IDP hearing, Mr. Chavez received none of these materials. Dkt. No. 2-2 at 52 (PBNDS 3.1(V)(H)); First Am. Compl. at ¶ 81; Proposed Second Am. Compl. at ¶ 88. Although detainees have the right to attend and present evidence at their IDP hearings, Mr. Chavez had no knowledge of the hearing and did not attend. First Am. Compl. at ¶ 81; Proposed Second Am. Compl. at ¶ 88. After concluding Mr. Chavez's IDP hearing, an ICE official and a GEO officer yet to be identified together authorized his placement in disciplinary segregation for twenty days, including time served. Inst. Disciplinary Panel Report at 8.

Mr. Chavez remained in solitary confinement in disciplinary segregation until March 1, 2018. Chavez Decl. at ¶ 32. Mr. Chavez stopped participating in the hunger strike because he did not want to risk further unmerited punishment. *Id.* at ¶ 34. After his release from segregation, he was reclassified to a higher security level and transferred to another unit. *Id.* at ¶ 32. He claims he was hit in the eye and put in solitary confinement because he participated in the hunger strike,

and faced further retaliation after the Tacoma Police Department came to investigate the incident involving his eye. *Id.* at ¶ 35.

## III. LEGAL STANDARDS

When reviewing a facial jurisdictional motion under Federal Rule of Civil Procedure 12(b)(1), the Court must accept the plaintiff's allegations as true, and give the plaintiff the benefit of all reasonable inferences. *Safe Air for Everyone v. Meyer*, 373 F.3d. 1035, 1039 (9th Cir. 2004). Where, as here, a defendant has asserted a facial jurisdictional challenge, the court should only grant the defendant's motion if the "alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). 28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." This provision intends to "avoid the needless expenditure of judicial resources where a court can instead 'permit the action to be maintained if it is at all possible to determine from the record that jurisdiction does in fact exist.'" *NewGen, LLC v. Safe Cig*, LLC, 840 F.3d 606, 612-13 (9th Cir. 2016) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 639 (2d. Cir. 2005)).

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts "as true the facts alleged in the complaint," and "must draw inferences in the light most favorable to the plaintiff." *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal quotation marks and citations omitted). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

**American Civil Liberties Union of Washington**
901 5th Ave., Suite 630
Seattle, WA 98164
206-624-2184

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

If a complaint fails to state a claim upon which relief may be granted, the court may grant the non-moving party leave to amend. Leave should be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted unless it is clear the complaint cannot be saved by amendment. *See, e.g. Jackson v. Barnes*, 749 F.3d 755, 766-67 (9th Cir. 2014); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012).

## IV. ARGUMENT

### A. This Court Has Subject Matter Jurisdiction; ICE Defendants Have Waived Sovereign Immunity Under 5 U.S.C. § 702.

ICE Defendants argue that this Court lacks subject matter jurisdiction because the United States has not waived its sovereign immunity. Dkt. No. 38 at 3-6, ICE Defs.' Mtn. to Dismiss. However, the United States has waived its sovereign immunity under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. The APA provides judicial relief to individuals who have suffered legal wrong because of an agency's action. *Id.* It also provides for the United States' waiver of sovereign immunity where a plaintiff seeks relief other than monetary damages for an agency's action or inaction, including by an agency's officer or employee. *Id.* Under Section 702, the United States expressly "waive[s] sovereign immunity in non-statutory review actions for nonmonetary relief brought under 28 U.S.C. § 1331." *Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation*, 792 F.2d 782, 793 (9th Cir. 1986); *see also Clinton v. Babbitt*, 180 F.3d 1081, 1087 (9th Cir. 1999) (concluding same).

Under § 702, this Court has subject matter jurisdiction over this case. Even where a suit is not expressly brought under the APA, its waiver of sovereign immunity may apply where the plaintiff has raised a constitutional challenge against a government agency. *See The Presbyterian Church v. U.S.*, 870 F.2d 518, 524-25 (9th Cir. 1989) (finding waiver to sovereign immunity under APA in challenge to Immigration and Naturalization Service investigation

PL.'S RESPONSE TO ICE DEF.'S MOTION  
TO DISMISS - 7

**American Civil Liberties Union of Washington**
901 5th Ave., Suite 630
Seattle, WA 98164
206-624-2184

brought directly under the Constitution); *Treasurer of N.J. v. U.S. Dep't of the Treasury*, 684 F.3d 382, 399-400 (3d. Cir. 2012); *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 774-75 (7th Cir. 2011) ("The waiver applies when any federal statute authorizes review of agency action, as well in cases involving constitutional challenges and other claims arising under federal law"); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 187 (D.C. Cir. 2006) (concluding that Section 702's waiver of sovereign immunity "is not limited to APA cases").

Mr. Chavez brings a claim under the First Amendment of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201. Mr. Chavez seeks only declaratory and injunctive relief from the agency. He does not seek monetary relief from the ICE Defendants. Proposed Second Am. Compl. at ¶¶ 106-10. He further brings an explicit claim under the APA in his Second Amended Complaint. Proposed Second Am. Compl. at ¶¶ 28-30.

For these reasons, this Court has subject matter jurisdiction of this case under 28 U.S.C. § 1331, which provides "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**B.   Crediting the Allegations in the Second Amended Complaint, ICE Defendants Are Clearly Liable for Violation of Mr. Chavez's First Amendment Rights.**

ICE Defendants further argue that Mr. Chavez has failed to sufficiently allege a claim against them. Mr. Chavez's Second Amended Complaint, however, provides facts clearly sufficient to establish liability of ICE Defendants for improper retaliation against Mr. Chavez in violation of the First Amendment.

Within the prison context, a First Amendment retaliation claim requires five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

**American Civil Liberties Union of Washington**
901 5th Ave., Suite 630
Seattle, WA 98164
206-624-2184

Notably, ICE Defendants do not contest four of these five elements. ICE Defendants argue only that Mr. Chavez has failed to show that they themselves took adverse action against him. ICE Defs.' Mtn. to Dismiss at 7 ("[P]laintiff's amended complaint does not allege that the federal defendants engaged in that conduct."). However, in his Second Amended Complaint, Mr. Chavez has clearly alleged facts sufficient to establish ICE Defendants' liability for improper retaliation in violation of the First Amendment. First, ICE is detaining Mr. Chavez is its custody as he awaits adjudication of his immigration case. Chavez Decl. at ¶ 2; Proposed Second Am. Compl. ¶ 10. Second, ICE Defendants had, at a minimum, constructive knowledge that he participated in the hunger strike, and assumed that Mr. Chavez led the strike in his unit. ICE officials reviewed Officer Beardsley's use of force against Mr. Chavez. The After Action Review, which included an ICE Assistant Field Office Director and an ICE Health Services Officer, noted that Mr. Chavez had "instructed detainees to refuse their lunch trays," and concluded that Defendant Beardsley's use of force was "appropriate" and was "carried out in a professional manner" because Mr. Chavez's "own actions created the opportunity for his eye to accidentally be poked." Proposed Second Am. Compl. ¶ 58; Mell Decl. Ex. A at 6-7. And most significantly, an ICE official authorized Mr. Chavez's placement in disciplinary segregation for twenty days, including time served. Proposed Second Am. Compl. at ¶¶ 90-92. Inst. Disciplinary Panel Report at 8.

Moreover, ICE's Seattle Field Office maintains close oversight of the use of segregation at NWDC. For example, ICE must be immediately notified and provided with a copy of all administrative segregation orders. Dkt. No 2-2, Cho Decl. Ex.H, PBNDS 2.12 at 12, 17 (PBNDS §§ 2.12(II)(3), 2.12(V)(A)(2)(f)). NWDC's facility administrator must coordinate with ICE's Field Office Director in considering whether less restrictive housing or custodial options are available for detainees in segregation. NWDC must notify ICE's Field Office Director in writing

PL.'S RESPONSE TO ICE DEF.'S MOTION TO DISMISS - 9

**American Civil Liberties Union of Washington**
901 5th Ave., Suite 630
Seattle, WA 98164
206-624-2184

whenever ICE detainees have been held in extended segregation placements. PBNDS 2.12 at 19-20 (PBNDS § 2.12(V)(C)).

Significantly, ICE Defendants do not contest that Mr. Chavez's participation in a hunger strike constituted protected conduct. *Stefanoff v. Hays Cnty.*, 154 F.3d 523, 527 (5th Cir. 1998) (per curiam) (concluding that a hunger strike in prison "may be protected by the First Amendment if it was intended to convey a particularized message"); *Dumbrique v. Brunner*, No. 14-CV-02598-HSG, 2016 WL 3268875, at *7 (N.D. Cal. June 15, 2016) (concluding same). Nor do they contest that his assault, solitary confinement, and transfer to a higher security classification were due to his protected conduct. *Hines v. Gomez*, 108 F.3d 265, 268-69 (9th Cir. 1997) (giving no deference to a prison's finding of a rule violation in First Amendment retaliation context); *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (finding circumstantial evidence of retaliation to be sufficient to establish causality for purposes of a motion to dismiss). ICE Defendants do not contest that these actions chilled Mr. Chavez's exercise of free speech. *Hines,* 108 F.3d at 268-69 (concluding that placement in segregation on the basis of false charges can chill First Amendment activity). ICE Defendants also do not argue that these actions reasonably advanced a legitimate correctional goal. *Watson v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012) ("A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious").

Because Mr. Chavez, through his Second Amended Complaint, has alleged sufficient facts to establish liability of ICE Defendants, the Motion to Dismiss should be denied.

**C.  Mr. Chavez is Entitled to Declaratory and Injunctive Relief.**

ICE Defendants further argue that Mr. Chavez's claims must be dismissed because his requests for declaratory and injunctive relief are too vague and broad. Mr. Chavez's requests for declaratory judgment and injunctive relief, however, are proper. Mr. Chavez's Second Amended Complaint requests specific and narrowly tailored declaratory relief, in the form of a judgment

**American Civil Liberties Union of Washington**
901 5th Ave., Suite 630
Seattle, WA 98164
206-624-2184

declaring that Defendants "have violated Plaintiff's First Amendment right to freedom of speech and expression by subjecting him to assault, incarceration in segregation, solitary confinement, and/or isolation, and placement in a higher security level, in retaliation for his participation in a hunger strike." Proposed Second Am. Compl. at § VIII.2. Mr. Chavez further seeks specific and narrowly tailored injunctive relief "prohibiting Defendants . . . from retaliating against Plaintiff, including by assault, incarceration of Plaintiff in segregation, solitary confinement, or isolation, or placement in a higher security level based upon his engagement in free speech activities protesting conditions of confinement at NWDC." Proposed Second Am. Compl. at § VIII.1.

ICE Defendants incorrectly state that Mr. Chavez is not entitled to the relief he seeks. Mr. Chavez's requests for injunctive and declaratory are identical in scope and specificity to those granted in other cases for First Amendment retaliation in the context of prisons. *See, e.g. Rhodes*, 408 F.3d at 565-66 (detailing declaratory relief that officers violated plaintiff's First Amendment rights and injunctive relief prohibiting officers "from retaliating against him in the future, requiring them to return his property, and preventing them from removing him from his position as a legal clerk or confiscating his legal papers"). Indeed, a broad grant of injunctive relief may be proper in a civil rights context. "Notwithstanding the arguments against the use of a broad decree, there are instances—as when violence, coercion, or infringements of civil rights have taken or may take place—in which courts are justified in issuing decrees that embrace a fairly wide range of conduct." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2955 (3d. ed. 2008).

ICE Defendants also incorrectly claim that a plaintiff is not entitled to general request for injunctive relief. Even where an injunctive order is "too general," a court is not deprived of jurisdiction over the matter. *McKenney v. Buffelen Mfg. Co.*, 232 F.2d 5, 13 (9th Cir. 1956).

Furthermore, Federal Rule of Civil Procedure 65(d)'s "obligation to provide reasonable detail applies only to the order for injunctive relief and does not mean that plaintiff must be any

| PL.'S RESPONSE TO ICE DEF.'S MOTION TO DISMISS - 11 | **American Civil Liberties Union of Washington** 901 5th Ave., Suite 630 Seattle, WA 98164 206-624-2184 |

more specific in drafting the complaint than generally is required by Rule 8." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2955 (3d. ed. 2008).

//
//
//
//
//
//
//
//
//
//


PL.'S RESPONSE TO ICE DEF.'S MOTION
TO DISMISS - 12

**American Civil Liberties Union of Washington**
901 5th Ave., Suite 630
Seattle, WA 98164
206-624-2184

# V. CONCLUSION

For these reasons, Mr. Chavez respectfully requests that this Court Deny ICE Defendants' Motion to Dismiss, and allow his claim seeking injunctive and declaratory relief to proceed.

RESPECTFULLY SUBMITTED this May 21, 2018.

        AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION

        By:    */s/Emily Chiang*
                Emily Chiang, WSBA No. 50517
                echiang@aclu-wa.org
                Eunice Hyunhye Cho,* GA Bar No. 632669
                echo@aclu-wa.org
                Antoinette M. Davis, WSBA No. 29821
                tdavis@aclu-wa.org
                901 Fifth Avenue, Suite 630
                Seattle, WA 98164
                Tel: (206) 624-2184

        McNAUL EBEL NAWROT & HELGREN, PLLC

                Daniel M. Weiskopf, WSBA #44941
                Theresa Demonte, WSBA#43994
                600 University Street, Suite 2700
                Seattle, Washington 98101
                Tel:   (206) 467-1816
                Fax:  (206) 624-5128
                Email: dweiskopf@mcnaul.com
                          tdemonte@mcnaul.com

        *Admitted *pro hac vice*

        *Attorneys for Plaintiff Jesus Chavez Flores*

# DECLARATION OF SERVICE

On May 21, 2018, I caused to be served a true and correct copy of the foregoing document upon counsel of record, at the address stated below, via the method of service indicated:

| | | |
|---|---|---|
| Antoinette Marie Davis<br>Eunice Cho<br>Emily Chiang<br>ACLU of Washington<br>901 Fifth Ave., Suite 630<br>Seattle, WA 98164<br>Email: tdavis@aclu-wa.org<br>　　　echo@ aclu-wa.org<br>　　　echiang@aclu-wa.org<br>*Attorneys for Plaintiff* | ☐<br>☐<br>☐<br>☐<br>☑ | Via Messenger<br>Via U.S. Mail<br>Via Overnight Delivery<br>Via Facsimile<br>Via E-mail |
| Sarah K. Morehead<br>US Attorney's Office (SEA)<br>700 Stewart St., Suite 5220<br>Seattle, WA 98101-1271<br>Email: sarah.morehead@usdoj.gov<br>*Attorney for United States Immigration and Customs Enforcement, Thomas D. Homan, Bryan Wilcox and William Penaloza* | ☐<br>☐<br>☐<br>☐<br>☑ | Via Messenger<br>Via U.S. Mail<br>Via Overnight Delivery<br>Via Facsimile<br>Via E-mail |
| Joan K. Mell<br>III Branches Law PLLC<br>1019 Regents Blvd., Suite 204<br>Fircrest, WA 98466<br>Email: joan@3brancheslaw.com<br>*Attorney for The GEO Group, Inc. and Lowell Clark, Michael Beardsley, Leroy Portillo and Geo Does 1-10* | ☐<br>☐<br>☐<br>☐<br>☑ | Via Messenger<br>Via U.S. Mail<br>Via Overnight Delivery<br>Via Facsimile<br>Via E-mail |

I declare under penalty of perjury under the laws of the United States of America and the State of Washington that the foregoing is true and correct.

DATED this 21st day of May, 2018, at Seattle, Washington.

s/ I'sha Willis
I'sha Willis, *Legal Assistant*

PL.'S RESPONSE TO ICE DEF.'S MOTION TO DISMISS - 14

**American Civil Liberties Union of Washington**
901 5th Ave., Suite 630
Seattle, WA 98164
206-624-2184

3934-001 he211n07rv 2018-05-21