UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESUS CHAVEZ FLORES,

　　　　　　Plaintiff,

　　v.

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT, et
al.,

　　　　　　Defendants.

CASE NO. 3:18-cv-05139-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: October 26, 2018

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United

States Magistrate Judge David W. Christel. Presently pending before the Court is GEO

Defendants'[1] Motion and Memorandum for Summary Judgment Dismissal of Plaintiff's Second

Amended Complaint ("Motion"). Dkt. 60.

The Court concludes Plaintiff has failed to state a cognizable cause of action under the

First Amendment against GEO Defendants, failed to show a dispute of material fact regarding

---

[1] The GEO Defendants are: The GEO Group, Inc., Lowell Clark, William McHatton, Michael Beardsley, Leroy Portillo, and GEO Does 1-10.

his assault and battery claims against GEO Defendants, failed to show a dispute of material fact regarding a false imprisonment claim against Defendants McHatton, Portillo and GEO Does 1-10, and failed to state a claim regarding the negligence claims against GEO Defendants. The Court, however, finds there is a genuine issue of material fact regarding the false imprisonment claim alleged against Defendants The GEO Group, Inc. and Clark.

Accordingly, the Court recommends GEO Defendants' Motion (Dkt. 60) be granted-in-part and denied-in-part. The Court recommends the false imprisonment claim alleged against Defendants The GEO Group, Inc. and Clark proceed, but all other claims against the GEO Defendants be dismissed.

## I.      BACKGROUND

Plaintiff Jesus Chavez Flores, an immigrant detainee housed at the Northwest Detention Center ("NWDC"), alleges GEO Defendants violated his First Amendment rights by retaliating against him when he engaged in a hunger strike. Dkt. 54. Specifically, Plaintiff asserts GEO Defendants violated his "right to freedom of speech and freedom of expression by assaulting him, placing him in solitary confinement, and changing his security level in retaliation for his free speech activities." *Id*. at ¶ 107. Plaintiff also alleges state law claims of assault and battery, false imprisonment, and negligence against GEO Defendants based on their conduct toward Plaintiff during and following the hunger strike. *Id.* at ¶¶ 111-20.

GEO Defendants filed the Motion on July 10, 2018. Dkt. 60. Plaintiff filed a Response and GEO Defendants filed their Reply on August 3, 2018. Dkt. 68, 74. The Court heard oral argument on September 7, 2018.[2]

---

[2] During the hearing, the Court heard argument from Attorney Joan K. Mell, on behalf of GEO Defendants, and Attorney Eunice Cho, on behalf of Plaintiff. Attorney Sarah K. Morehead was present on behalf of the United States Immigration and Custom Enforcement Defendants.

## II.    STANDARD OF REVIEW

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III.    DISCUSSION

In the Motion, GEO Defendants assert there is no genuine issue of material fact as to Plaintiff's: (A) First Amendment claim; (B) assault and battery claim; (C) false imprisonment claim; and (D) negligence claims. Dkt. 60.

### A.  First Amendment

Plaintiff contends GEO Defendants violated his First Amendment rights by retaliating against him when he engaged in a hunger strike at the NWDC. *See* Dkt. 54. First, GEO Defendants allege the First Amendment is not enforceable against GEO Defendants and therefore the First Amendment claim should be dismissed. Dkt. 60, 74. Second, if the Court

1    determines the First Amendment is enforceable against GEO Defendants, GEO Defendants

2    contend they are entitled to summary judgment because no genuine issue of material fact remains

3    regarding Plaintiff's First Amendment claim. *Id.*

4          1.  *First Amendment Enforceability*

5          GEO Defendants assert, as private actors, they are not liable for purposes of the First

6    Amendment under 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of Fed. Bureau of*

7    *Narcotics*, 403 U.S. 388 (1971), or 5 U.S.C. §§ 702, 706 ("Administrative Procedure Act" or

8    "APA"). Dkt. 60, pp. 5-6. In his Response to the Motion, Plaintiff states he is not bringing a First

9    Amendment claim against GEO Defendants under § 1983, *Bivens*, or the APA. Dkt. 68, pp. 7-8.

10   Rather, Plaintiff bases his First Amendment claim against GEO Defendants "on the federal

11   courts' equity jurisdiction to enforce the Constitution." *Id.* at p. 8. During oral argument,

12   Plaintiff's counsel clarified Plaintiff is alleging a stand-alone cause of action for injunctive relief

13   under the First Amendment. To support this cause of action, Plaintiff relies on 28 U.S.C. § 1331,

14   *Bell v. Hood*, 327 U.S. 678 (1946) and *Correctional Services Corp. v. Malesko*, 534 U.S. 61

15   (2001), and out-of-circuit case law.

16         Federal courts are courts of limited jurisdiction. *See* 28 U.S.C. § 1331. Article III of the

17   Federal Constitution states lower federal courts have original jurisdiction over "all Cases, in Law

18   and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or

19   which shall be made, under their Authority." U.S. CONST., Art. III, §§ 1, 2. Under § 1331, district

20   courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or

21   treaties of the United States." "[W]here the complaint . . . is so drawn as to seek recovery directly

22

23

24

1  under the Constitution or laws of the United States, the federal court . . . must entertain the suit."

2  *Bell*, 327 U.S. at 681-82.[3]

3      Here, the Second Amended Complaint was drawn to seek recovery, in part, on the ground

4  that all Defendants, including GEO Defendants, violated Plaintiff's First Amendment rights. Dkt.

5  54, ¶¶ 105-110. As such, the Second Amended Complaint is drawn to seek recovery directly

6  under the Constitution. Therefore, the federal district court has subject matter jurisdiction over

7  this case under § 1331. *See Bell*, 327 U.S. 678.

8      However, § 1331 does not create a substantive cause of action. Under § 1331, a source of

9  federal law, other than § 1331, must give rise to a private right of action. *See Simmat v. U.S.*

10  *Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) (stating jurisdiction under § 1331 is not

11  enough; "a plaintiff must also state a claim upon which relief may be granted, what used to be

12  called stating a cause of action"); *White v. Paulsen*, 997 F. Supp. 1380, 1382–83 (E.D. Wash.

13  1998) ("because § 1331 is a pure jurisdictional statute that does not, on its own, create a private

14  right of action for all violations of federal law, the critical question is whether a right of action is

15  created by some other source of federal law"); *see also Montana–Dakota Util. Co. v.*

16  *Northwestern Pub. Serv. Co.*, 341 U.S. 246, 249 (1951) ("The Judicial Code, in vesting

17  jurisdiction in the District Courts, does not create causes of action, but only confers jurisdiction

18  to adjudicate those arising from other sources which satisfy its limiting provisions."). Therefore,

19  the Court must determine if Plaintiff's First Amendment claim against GEO Defendants states a

20  cause of action.

21

22  _____

23      [3] Two possible exceptions exist wherein the federal court would not entertain a lawsuit: claims that (1) clearly appear to be immaterial and made solely for the purpose of obtaining jurisdiction, or (2) are wholly insubstantial and frivolous. *See Bell*, 327 U.S. at 682-83; *Peoples v. CCA Detention Centers*, 442 F.3d 1090, 1095

24  (10th Cir. 2005). The parties do not assert either exception exists in this case. *See* Dkt. 60, 68.

1        During oral argument, Plaintiff maintained the First Amendment creates a stand-alone

2    cause of action for injunctive relief. The Supreme Court has established a cause of action may be

3    implied directly under the Constitution, but has stated courts should not imply rights and

4    remedies as a matter of course, "no matter how desirable that might be as a policy matter[.]"

5    *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1856 (2017) (internal quotations omitted). Notably, the

6    Supreme Court has only found implied causes of action in specific instances under the Fourth,

7    Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. 388 (finding Fourth Amendment cause of

8    action against federal officers); *Davis v. Passman*, 442 U.S. 228, 242 (1979) (recognizing *Bivens*

9    claim in Fifth Amendment cause of action for violation of employee's due process rights);

10   *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing *Bivens* claim under Eighth Amendment's

11   prohibition on cruel and unusual punishment against prison officials). The Supreme Court has

12   "declined to extend *Bivens* to a claim sounding in the First Amendment." *Ashcroft v. Iqbal*, 556

13   U.S. 662, 675 (2009) (assuming without deciding a First Amendment claim was actionable under

14   *Bivens*).

15       Additionally, the Ninth Circuit has determined a plaintiff "has no cause of action directly

16   under the United States Constitution." *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704,

17   705 (9th Cir. 1992); *see also Miller v. U.S.*, 73 F.3d 878, 881 (9th Cir. 1995) ("the Constitution

18   does not create a fundamental right to bring suit for injuries caused by government employees");

19   *Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, City of Browning*, 301 F. Supp.

20   85, 90 (D. Mont. 1969) (quoting *Bell v. Hood*, 71 F.Supp. 813, 818 (S.D. Cal. 1974)) ("'the mere

21   enactment of the Civil Rights Act, 8 U.S.C.A. 43, 47, strongly indicates that Congress did not

22   regard the Constitution itself as providing a cause of action to individuals whose rights

23

24

thereunder are violated'").[4] In fact, a district court in California has found a plaintiff "cannot bring a claim directly under the First Amendment[.]" *Clarke v. Upton*, 703 F.Supp.2d 1037, 1050 (E.D. Cal. 2010).

Plaintiff contends an independent cause of action under the First Amendment was acknowledged in *Bell*. "The core holding in *Bell* was 'that the nonexistence of a cause of action was no proper basis for a jurisdictional dismissal.'" *Orff v. United States*, 358 F.3d 1137, 1150 (9th Cir. 2004) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998)). The Supreme Court stated federal courts "must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief[.]" *Bell*, 327 U.S. at 682. Whether a complaint states a cause of action on which relief can be granted is a question of law, and must be decided after the court has assumed jurisdiction. *Id*. *Bell* establishes the circumstances where federal courts have subject matter jurisdiction to hear a case and issue equitable remedies. *Bell* did not recognize an independent cause of action for equitable relief under the First Amendment. In fact, on remand, the district court in *Bell*, found that neither the Constitution nor the statutes of the United States gave rise to any cause of action in favor of the plaintiffs. *See Bell v. Hood*, 71 F.Supp. 813 (S.D. Cal. 1947). Therefore, the Court is not persuaded *Bell* acknowledges a stand-alone cause of action for injunctive relief.

Plaintiff also contends *Malesko* provides for stand-alone availability of injunctive relief to enforce constitutional violations. In *Malesko*, a case determining whether *Bivens* should be extended to a private corporation operating a halfway house under contract with the Bureau of Prisons, the Supreme Court noted "injunctive relief has long been recognized as the proper

---

[4] While the Ninth Circuit case law discusses the proper cause of action for constitutional violations against state actors under § 1983, the Court finds these cases indicate there is no stand-alone cause of action for injunctive relief under the First Amendment against a government contractor.

means for preventing entities from acting unconstitutionally." 534 U.S. at 74. While *Malesko* states the proper remedy to prevent entities from acting unconstitutionally is injunctive relief, *Malekso* does not state that the remedy of injunctive relief for alleged constitutional violations creates a stand-alone cause of action under the First Amendment. *See id.*

Rather, it is a "well-settled rule that a claim for 'injunctive relief' standing alone is not a cause of action." *Ramos v. Chase Home Finance*, 810 F.Supp.2d 1125, 1132 (D. Haw. 2011); *Sylla v. JPMorgan Chase Bank, N.A.*, 2016 WL 4096405 at *1 n.2 (W.D. Wash. Aug. 2, 2016). Further, the "Declaratory Judgment Act only creates a remedy. . . . a permanent injunction is a form of relief that the court may grant when a plaintiff succeeds on a substantive cause of action that lends itself to this remedy." *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F.Supp.3d 1140, 1156 (W.D. Wash. 2017) (internal quotations omitted). The Court has the authority to issue injunctive and declaratory relief for violations of the Constitution. But, these are merely remedies. "Where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion," federal courts may exercise equitable jurisdiction to remedy the violations. *See Bell*, 327 U.S. at 684. However, if a federal statute provides no general right to sue for the invasion of legal rights, federal courts may only exercise equitable jurisdiction if congressional intent indicates a desire to permit equitable relief. *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1385 (2015). Plaintiff has not cited, nor does the Court find, Supreme Court or Ninth Circuit authority permitting a stand-alone injunctive relief claim under the First Amendment.[5]

---

[5] Plaintiff also asserts out-of-circuit case law establishes that this Court can entertain a stand-alone injunctive relief claim under the First Amendment. As there is no Supreme Court or Ninth Circuit authority supporting a stand-alone cause of action for a constitutional violation under the First Amendment, the Court is not persuaded by this out-of-circuit case law.

1    However, even if the First Amendment creates a stand-alone cause of action for

2    injunctive relief, "[d]eclaratory or injunctive relief designed to affect the conduct of a

3    government entity is available only in an official capacity suit." *McCarty v. Roos*, 2012 WL

4    6138313, at *14 (D. Nev. Dec. 7, 2012) (citing *Wolfe v. Strankman,* 392 F.3d 358, 360 n.2 (9th

5    Cir. 2004). Here, Plaintiff has not specifically sued GEO Defendants in their official capacity,

6    *see* Dkt. 54, 68, thus, Plaintiff has not stated a claim for equitable relief against GEO Defendants.

7    Further, while Plaintiff contends GEO Defendants are government actors, case law indicates

8    dismissal is appropriate for injunctive relief claims against private companies operating federal

9    prisons because they are not state actors. *See Davis v. GEO Grp. Corr., Inc.*, 2018 WL 814210,

10   at *1 (W.D. Okla. Feb. 9, 2018) (dismissing defendants in their official capacities because a

11   private prison employee is not a state actor and lacks an official capacity as the term is used

12   under the Eleventh Amendment); *Harris v. Corr. Corp. of America Leavenworth Det. Ctr.*, 2016

13   WL 6164208 (D. Kan. Oct. 24, 2016) (finding no cause of action against private prison facility

14   for injunctive relief under the First Amendment because the private prison "is not an individual

15   person against whom a claim of constitutional violation may be asserted or who could implement

16   an order granting an injunction"); *Somie v. GEO Grp., Inc.*, 2011 WL 4899692, at *4 (E.D.N.C.

17   Oct. 13, 2011) (dismissing First Amendment claim for injunctive relief against GEO because

18   government action is required for liability pursuant to the First Amendment and GEO is not a

19   government actor); *Mathis v. GEO Grp.*, No. 2:08–CT–21–D (E.D.N.C. Nov. 9, 2009)

20   ("regardless of whether plaintiff seeks damages or an injunction from GEO under *Bivens* or *Bell*

21   *v. Hood,* government action is required, and the Supreme Court and the Fourth Circuit have

22   rejected the notion that GEO-a private entity operating a private prison—is a government actor

23   who can violate the Eighth Amendment"). As Plaintiff is not suing GEO Defendants in their

24

1  official capacities, and as case law indicates claims for injunctive relief are not proper against

2  GEO Defendants, Plaintiff has failed to state a cause of action against GEO Defendants for

3  equitable relief under the First Amendment.

4         In summation, Plaintiff does not cite, and the Court does find, binding legal authority

5  supporting the proposition that the First Amendment and this Court's equity jurisdiction creates a

6  stand-alone cause of action for equitable relief under the First Amendment against government

7  contractors. Therefore, the Court finds Plaintiff has failed to state a First Amendment claim

8  against GEO Defendants. Accordingly, the Court recommends the First Amendment claim

9  against GEO Defendants be dismissed.

10        2.  *Retaliation*

11        As the Court has determined Plaintiff has failed to state a First Amendment claim against

12  GEO Defendants, the Court declines to consider whether a genuine issue of material fact exists

13  regarding the retaliation claim alleged against GEO Defendants.

14        B.  <u>Assault and Battery</u>

15        GEO Defendants assert they are entitled to summary judgment on the state law claim of

16  assault and battery because there is no evidence GEO Defendants intentionally made contact

17  with Plaintiff, and any contact with Plaintiff was the direct result of GEO Defendants

18  maintaining security and order at the NWDC. Dkt. 60, pp. 12-13.

19        1.  *Legal Standard*

20        Washington law defines the tort of assault as the use or threatened immediate use of force

21  that causes reasonable apprehension of harm. *Brower v. Ackerley*, 88 Wash.App. 87, 943 P.2d

22  1141, 1144–45 (Wash. Ct. App. 1997). Battery is defined as an intentional tort, requiring the

23

24

1    tortfeasor to intend a harmful touching and requiring the plaintiff to show that there was no

2    consent to the touching. *Garratt v. Dailey,* 46 Wash.2d 197, 279 P.2d 1091, 1093 (1955).

3           However, because of the unique relationship between Plaintiff and GEO Defendants in

4    this case, the Court must also examine whether the alleged force used was excessive.

5    "Washington courts have long recognized a jailer's special relationship with inmates, particularly

6    the duty to ensure health, welfare, and safety." *Gregoire v. City of Oak Harbor*, 170 Wash. 2d

7    628, 635 (2010); *see* RCW § 70.48.071 (correctional facilities must have standards necessary to

8    meet federal and state constitutional requirements relating to health, safety, and welfare of

9    inmates and staff). Under Washington law, force used by a public officer is not unlawful

10   "[w]henever necessarily used ... in the performance of a legal duty." *Brooks v. City of Seattle*,

11   599 F.3d 1018, 1031 (9th Cir. 2010) (citing RCW 9A.16.020(1)). Thus, if there are no genuine

12   issues of material fact regarding whether the force used in this case was necessary to protect the

13   health, safety, and welfare of the detainees at the NWDC, GEO Defendants are entitled to

14   summary judgment. *See e.g. Mancini v. City of Tacoma*, 188 Wash. App. 1006 (2015) (internal

15   quotations omitted) (an officer making an arrest is justified in using sufficient force to subdue a

16   prisoner; however, "an officer becomes a tortfeasor and is liable as such for assault and battery if

17   unnecessary violence or excessive force is used in accomplishing the arrest"); *Walker v. Jones*,

18   2010 WL 3702659, at *2 (N.D. Cal. Sept. 16, 2010) ("In order to prevail on an excessive force

19   claim, a pretrial detainee must show the use of force was excessive because it was not reasonably

20   necessary to maintain or restore order and/or discipline.").

21

22

23

24

1    Further, the Fourteenth Amendment's Due Process Clause protects pretrial detainees

2  from excessive force. *Kingsley v. Hendrickson,* 135 S.Ct. 2466, 2470 (2015).[6] To show excessive

3  force under the Fourteenth Amendment, "a pretrial detainee must show only that the force

4  purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473.

5    "[O]bjective reasonableness turns on the 'facts and circumstances of each particular

6  case,'" without regard to the officers' underlying intent or motivation. *Id.* (quoting *Graham v.*

7  *Connor,* 490 U.S. 386, 396 (1989)). The Court must weigh the circumstances from the viewpoint

8  of a reasonable officer at the scene and "account for the legitimate interests that stem from the

9  government's need to manage the facility in which the individual is detained, appropriately

10  deferring to policies and practices that in the judgment of jail officials are needed to preserve

11  internal order and discipline and to maintain institutional security." *Id.* (internal quotation and

12  citation omitted). In assessing reasonableness, the Court may consider "the relationship between

13  the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any

14  effort made by the officer to temper or to limit the amount of force; the severity of the security

15  problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was

16  actively resisting." *Id.*

17    2. *Evidence*

18    GEO Defendants' evidence shows, on February 8, 2018, a disturbance occurred at the

19  NWDC in unit C3. Dkt. 23, Portillo Dec., ¶ 2; Dkt. 22. Non-party Lieutenant Snyder notified

20  Defendant Portillo that Plaintiff "had announced to the unit that the detainees were not to eat

21

22    ─────────────────

23    [6] The Court notes Washington courts typically review excessive force used during an arrest under the Fourth Amendment. *See e.g. McKinney*, 103 Wash.App. 391. As this case involves a pretrial detainee, the Court will review this case under the Fourteenth Amendment. However, the Court notes both the Fourth Amendment and Fourteenth Amendment apply the same "objectively reasonable" standard to the use of force. Thus, this distinction

24  is immaterial to the resolution of the case.

1  lunch." Dkt. 23, Portillo Dec., ¶ 6. Defendant Portillo planned to escort Plaintiff from the unit to

2  separate Plaintiff from other detainees who wanted to eat. *Id*. Defendant Portillo arrived at Unit

3  C3 and waved Plaintiff to join Defendant Portillo on the main floor of the unit. *Id*. at ¶ 7.

4  Plaintiff went to the main floor of the unit, accompanied by another detainee. *Id*. Defendant

5  Portillo invited both detainees to speak with him outside the unit; Plaintiff and the second

6  detainee refused. *Id*. at ¶ 8; *see* Dkt. 22, p. 5. "Other detainees joined in resistance." Dkt. 23,

7  Portillo Dec., ¶ 8.

8      "The situation became a security concern when [Plaintiff] and another detainee Mr.

9  Orozco-Cadenas yelled out to the detainee population to disregard Lt. Snyder's instructions to

10  bunk up and Detainee Orozco-Cadenas yelled out to the detainee population to not bunk up and

11  block the door." Dkt. 23, Portillo Dec., ¶ 9. A large number of detainees surrounded Defendant

12  Portillo and Lt. Snyder, stood in front of the door, and blocked the exit. *Id*. Both Defendant

13  Portillo and Lt. Snyder gave directives to move away from the door, but the detainees refused.

14  *Id*.

15      At this time, non-party Detention Officer Gordon requested additional assistance. Dkt 23,

16  Portillo Dec., ¶ 10. Defendant Beardsley was the first officer to enter the unit after the request for

17  assistance. *Id*. Defendant Portillo saw Defendant Beardsley "ushering the detainees away from

18  the exit and struggling with one who was resisting." *Id*. Defendant Portillo also saw Plaintiff

19  "holding his eye as if he had been poked." *Id*. Defendant Portillo then escorted Plaintiff to the

20  medical unit without restraints. *Id*. at ¶ 11.

21      A use of force review and a memorandum show Defendant Portillo and Lt. Snyder

22  requested Plaintiff step outside the unit to discuss Plaintiff's instruction to detainees to refuse

23  their lunch trays. Dkt. 22, p. 5. Plaintiff refused to leave the unit and over half the unit began to

24

1 make their way towards and block the unit exit. *Id*. Each time Plaintiff was directed to exit, the

2 unit became more agitated. *Id*. at p. 10. Defendant Portillo and Lt. Snyder gave multiple

3 directives to the entire unit to "bunk up." *Id*. at p. 5. Detainee Orozco-Cadenas "counteracted

4 their directives by telling the unit to refuse all orders[.]" *Id*. Lt. Snyder began escorting Detainee

5 Orozco-Cadenas out of the unit; however, Detainee Orozco-Cadenas yelled to the other detainees

6 to block the door and multiple detainees blocked the door. *Id*. at pp. 5, 10. Defendant Beardsley

7 arrived at Unit C3 and successfully cleared a pathway so Lt. Synder could exit the unit with

8 Detainee Orozco-Cadenas. *Id*. at p. 5.

9        Defendant Beardsley "proceeded to assist with bunking up detainees" and pushed

10 Detainee Mesino from behind; Detainee Mesino began to resist. Dkt. 22, pp. 5, 10. Defendant

11 Beardsley "grabbed [D]etainee Mesino near his collar and shoulder to gain control." *Id*. at pp. 5-

12 6. During the exchange with Detainee Mesino, Defendant Beardsley "accidently poked" Plaintiff

13 in the left eye. *Id*. at p. 6.

14        GEO Defendants also submitted a police report, wherein Plaintiff stated Defendant

15 Beardsley inadvertently hit Plaintiff in his left eye while another detainee stood between Plaintiff

16 and Defendant Beardsley. Dkt 22, p. 31. Plaintiff reported he felt pain to his left eye after he

17 observed Defendant Beardsley's hand come towards Plaintiff while Defendant Beardsley was

18 engaged in an altercation with another detainee. *Id*. at p. 32. Plaintiff reported "the strike was a

19 result of the officer wrestling with the other detainee and he believe[d] the strike to his eye was

20 accidental." *Id*.

21        A video submitted by GEO Defendants shows detainees blocking the unit exit. *See* Dkt.

22 24. Defendant Portillo declared he saw, on the video, Defendant Beardsley "extend his arm to

23 direct detainees away from the exit in close time and proximity to [Plaintiff] putting his hand

24

over his eye." Dkt. 23, Portillo Dec., ¶ 10. GEO Defendants' evidence shows Plaintiff was free of any injury as a result of the incident. *See* Dkt. 23, Portillo Dec., ¶ 13; Dkt. 22, pp. 11; Dkt. 33, Hartman Dec.; Dkt. 34.

GEO Defendants' evidence also shows, based upon Defendant McHatton's education, training, and experience as the Associate Warden of the NWDC, the officers "responded appropriately and effectively to de-escalate the disturbance in the housing unit." Dkt. 34, McHatton Dec., ¶ 8.

Plaintiff's evidence shows, on February 8, 2018, Plaintiff went on a hunger strike because of his concerns with conditions at the NWDC. Dkt. 32, Chavez Dec., ¶ 3. A guard instructed Plaintiff to come to the front of the unit. *Id*. at ¶¶ 5-6. An unnamed captain tried to take Plaintiff and Detainee Orozco-Cardenas out of the unit, but the other detainees objected. *Id.* at ¶ 7. Defendant Beardsley entered the unit when Plaintiff was standing near the door. *Id.* at ¶ 9. Defendant Beardsley began to push the detainees and pushed Plaintiff. *Id.* Unnamed guards tried to pull Plaintiff out of the unit, and detainees tried to pull Plaintiff back in the unit. *Id*. Defendant Beardsley "angrily grabbed the guy next to [Plaintiff] by his neck and choked him. A few moments later, [Plaintiff] felt the guard punch [him] in [his] face." *Id*. Plaintiff was hit in his left eye. *Id*.

Plaintiff was examined by the medical unit. Dkt. 32, Chavez Dec., ¶ 12. He was given pain medication. *Id*. The next morning, on February 9, 2018, Plaintiff returned to the medical unit because his eye was swollen and bruised and Plaintiff had a hard time opening his eye. *Id*. at ¶ 16. Plaintiff could see out of his eye, but it was blurry. *Id*.

Non-party Detainee Jose Mesino Garcia stated an unnamed guard entered the unit and began to push Plaintiff. Dkt. 2-3, ¶ 6. The unnamed guard grabbed Detainee Mesino by the neck

1    and choked him three times. *Id*. The unnamed guard then swung his arm, punching Plaintiff in

2    the eye. *Id*. Plaintiff also submitted the declaration of Detainee Benito Vasquez Sanchez, who

3    states a guard, whose name Detainee Vasquez is unsure of but thinks sounds like "Brendall," hit

4    Plaintiff very hard in the face. Dkt. 2-4, ¶¶ 6-7, 9.[7]

5         3.   *Analysis*

6         Initially, the Court finds there are no specific allegations or evidence showing Defendants

7    The GEO Group, Inc., Clark, McHatton, Portillo, or GEO Does 1-10 struck or created the

8    immediate apprehension of striking Plaintiff. As there is no evidence showing these Defendants

9    committed an assault and battery against Plaintiff, the Court finds there is no genuine issue of

10   material fact regarding the assault and battery claim alleged against these Defendants.

11   Accordingly, the Court recommends GEO Defendants' Motion be granted as to the assault and

12   battery claim alleged against Defendants The GEO Group, Inc., Clark, McHatton, Portillo, and

13   GEO Does 1-10.

14        As the Court recommends the assault and battery claim alleged against Defendants The

15   GEO Group, Inc., Clark, McHatton, Portillo, and GEO Does 1-10 be dismissed, the only assault

16   and battery claim remaining is the claim alleged against Defendant Beardsley.

17        Here, the evidence, viewed in the light most favorable to Plaintiff, shows Defendant

18   Beardsley did not purposely or knowingly touch Plaintiff. The evidence shows Defendant

19   Beardsley was engaged with another detainee and his arm swung around and hit Plaintiff. GEO

20   Defendants' evidence states the contact was accidental. In his declaration, Plaintiff states

21

22   _____

23   [7] The Court notes Plaintiff's evidence contains hearsay statements. For instance, Plaintiff states he heard other detainees asking why Defendant Beardsley hit Plaintiff, *see* Dkt. 32, Chavez Dec., ¶ 9, and Detainee Vasquez stated he heard "they almost took out [Plaintiff's] eyeball." Dkt. 2-4, Vasequez Dec., ¶ 7. As Plaintiff appears to be using these statements to prove the truth of the statement and has not shown these hearsay statements are admissible

24   at trial, the Court declines to consider the statements.

1  Defendant Beardsley was engaged with another detainee and a few moments later Plaintiff felt

2  Defendant Beardsley punch him in the face. In the police report, Plaintiff stated, while Defendant

3  Beardsley was involved in an altercation with another detainee, Plaintiff observed Defendant

4  Beardsley's arm come towards Plaintiff and then felt pain in his left eye. Dkt. 22, p. 33.

5      The record does contain two declarations from detainees. However, these declarations do

6  not create a genuine issue of material fact regarding Defendant Beardsley's intent. Detainee

7  Mesino does not identify the guard who punched Plaintiff. *See* Dkt. 2-3, Mesino Dec. Further, he

8  states the unknown guard swung his arm, punching Plaintiff in the eye. *Id.* at ¶ 6. There is no

9  evidence the guard intentionally swung his arm in an effort to hit Plaintiff. Detainee Vasquez

10  also fails to identify Defendant Beardsley in his declaration. *See* Dkt. 2-4. While Detainee

11  Vasquez states a guard with a name that sounds like "Brendall" hit Chavez very hard in the face,

12  he provides no information surrounding the hit or the guard's conduct toward Plaintiff. *See id.* at

13  ¶ 7. For example, he does not declare the contact was intentional. As such, the Court finds these

14  two declarations do not create a genuine issue of material fact regarding whether Defendant

15  Beardsley knowingly and intentionally touched Plaintiff.

16      Based on the evidence, viewed in the light most favorable to Plaintiff, Plaintiff has failed

17  to show there is a genuine issue of material fact regarding whether Defendant Beardsley

18  intentionally or knowingly struck Plaintiff. Further, there is no evidence showing Plaintiff was

19  apprehensive of a touching. Thus, Plaintiff has failed to show an assault or battery occurred. *See*

20  *Bundrick v. Stewart*, 128 Wash. App. 11, 18 (2005) ("the tortfeasor must intend an offensive

21  touching"); *Kumar v. Gate Gourmet Inc.*, 180 Wash. 2d 481, 504–05 (2014) ("the "intent"

22  element of battery is satisfied where a defendant knows to a "substantial certainty" that his

23  actions will result in the harmful or offensive touching). Plaintiff has also failed to show the first

24

1   element of a constitutional violation, in that he has failed to show force was purposely or

2   knowingly used against him. *See Kingsley*, 135 S.Ct. at 2473 ("a pretrial detainee must show

3   only that the force purposely or knowingly used against him was objectively unreasonable").

4        The evidence also shows any use of force in this case was objectively reasonable.

5   Plaintiff and other detainees decided to engage in a hunger strike on February 8, 2018. Plaintiff

6   was directed to come to the front of the housing unit to speak with Defendant Portillo regarding

7   the hunger strike. Defendant Portillo asked Plaintiff to exit the unit; Plaintiff did not leave the

8   unit, and detainees in the unit became agitated and began to block the exit of the unit. Because of

9   the security concern, Defendant Portillo and Lt. Snyder gave verbal directives to the detainees to

10  "bunk up." Detainee Orozco-Cardenas directed all inmates to ignore the guards' orders and block

11  the exit. The guards called for assistance. Defendant Beardsley arrived at the housing unit and

12  began pushing detainees to make a pathway for Lt. Snyder to exit with Detainee Orozco-

13  Cardenas. Defendant Beardsley pushed Plaintiff and another inmate. Plaintiff states guards were

14  attempting to pull him from the unit, but the other detainees pulled him back inside.

15       The undisputed evidence shows force was reasonable in this situation. Plaintiff and other

16  detainees were refusing to comply with verbal directives, were agitated, and were blocking the

17  exit to the unit. The two guards were not able to exit the unit with a detainee, and detainees were

18  pushing and pulling Plaintiff to keep him in the unit. As the evidence shows the detainees' were

19  blocking the exit, failing to comply with verbal directives, and pushing and pulling Plaintiff,

20  GEO Defendants have shown there was a need for the guards to use force to maintain order at

21  the NWDC. *See Whitley v. Albers*, 475 U.S. 312, 323 (1986) (finding, in the context of a prison

22  riot or other mass threat to prison security, dangerous force reasonably may be used to restore

23  order to the prison); *Forrester v. City of San Diego*, 25 F.3d 804, 807–08 (9th Cir. 1994) (finding

24

1  no excessive force when injury-causing pain compliance holds were used against passively

2  resisting demonstrators); *Dennis v. Thurman*, 959 F. Supp. 1253, 1260 (C.D. Cal. 1997)

3  ("Correctional officers may be required to use some measure of force if an inmate refuses a valid

4  order.").

5         The evidence also shows any force used by Defendant Beardsley was reasonable. The

6  undisputed evidence shows Plaintiff was not complying with the guards' verbal orders to exit the

7  unit or return to his bunk. He was in the middle of a group of detainees who were blocking the

8  exit of the unit.  Further, as discussed above, the evidence shows Defendant Beardsley was not

9  attempting to use force against Plaintiff. Rather, Plaintiff was struck when he was involved in a

10 prison disturbance and Defendant Beardsley was engaged with another detainee who was

11 resisting. As Plaintiff was involved in disrupting the security of the NWDC, he has failed to

12 provide evidence showing one swing of Defendant Beardsley's arm resulting in contact to

13 Plaintiff's face was objectively unreasonable. Thus, Plaintiff has failed to overcome GEO

14 Defendants' showing that the force used was necessary to perform Defendant Beardsley's legal

15 duty to maintain a safe and secure facility or a violation of Plaintiff's constitutional rights. *See*

16 *Nix v. Bauer*, 2007 WL 686506, at *4 (W.D. Wash. Mar. 1, 2007) (citing *Coles v. McNamara*,

17 131 Wash. 377, 385 (1924)) (noting an "officer is not liable for injuries inflicted in the use of a

18 reasonable force to maintain the peace, maintain order, or overcome resistance to his authority");

19 *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) ("Neither tackling nor

20 punching a suspect to make an arrest necessarily constitutes excessive force."); *Graham*, 490

21 U.S. at 396 ("Not every push or shove, even if it may seem unnecessary in the peace of the

22 judge's chambers ... violates the Fourth Amendment."); *Capps v. Atiyeh*, 559 F. Supp. 894, 906

23 (D. Or. 1982) (finding no excessive force when the inmate witnesses admitted that at the time the

24

1  guards allegedly used excessive force, the inmates were threatening the order and security of the

2  institution).

3      GEO Defendants have submitted evidence showing Defendant Beardsley did not

4  intentionally use force against Plaintiff. GEO Defendants have also submitted evidence showing

5  the use of force was reasonable to secure the unit. Plaintiff has not provided evidence rebutting

6  GEO Defendants' showing that there is no genuine issue of material fact regarding whether

7  Defendant Beardsley's actions were outside his legal duty or the force used was unreasonable.

8  As there is no genuine issue of material fact regarding whether Defendant Beardsley's use of

9  force was necessary in performing his legal duty or was objectively reasonable, Defendant

10 Beardsley is entitled to summary judgment on the state law assault and battery claim. *See*

11 *Anderson v. City of Bainbridge Island*, 472 Fed. Appx. 538, 540 (9th Cir. 2012) (affirming

12 dismissal of state law assault and battery claims where force was not excessive); *Goldsmith v.*

13 *Snohomish Cnty.*, 558 F.Supp.2d 1140, 1156 n.8 (W.D.Wash. 2008) (finding officers entitled to

14 state law qualified immunity on assault and battery claims where the use of force was reasonable

15 under § 1983 standards).[8]

16     In summation, the Court finds GEO Defendants' Motion as to the assault and battery

17 claim should be granted.

18     C.  False Imprisonment

19     Plaintiff alleges he was falsely imprisoned by Defendants The GEO Group, Inc., Clark,

20 Portillo, McHatton, and GEO Does 1-10 when he was placed in segregation following NWDC

21 guards finding adulterated food in his property box. Dkt. 54. GEO Defendants assert they are

---

23     [8] As the Court finds Defendant Beardsley is entitled to summary judgment on the assault and battery claim, the Court also finds Defendant The GEO Group, Inc. is not vicariously liable for any alleged assault and battery

24 committed by Defendant Beardsley.

1  entitled to summary judgment on the state law claim of false imprisonment because GEO

2  Defendants had some evidence to justify placing Plaintiff in disciplinary segregation. Dkt. 60,

3  pp. 13-14.

4          To state a claim of false imprisonment, a litigant must show he has been "deprived of

5  either liberty of movement or freedom to remain in the place of his lawful choice." *Bender v.*

6  *Seattle*, 99 Wash. 2d 582, 591 (1983). Plaintiff's false imprisonment claim first depends on his

7  ability to assert a liberty interest in remaining in general population. *See Foster v. Washington*,

8  2011 WL 2692971, *5 (W.D. Wash. July 11, 2011) (finding a false imprisonment claim relied on

9  the plaintiff's ability to assert a liberty interest in early release). Pretrial detainees retain "a

10 liberty interest in freedom from disciplinary confinement without due process." *Mitchell v.*

11 *Dupnik*, 75 F.3d 517, 525 (9th Cir. 1996). As Plaintiff is an immigration detainee, he has a

12 liberty interest in being free from disciplinary confinement. *See Hooper v. Clark*, 2007 WL

13 2138755, * 3 (W.D. Wash. July 23, 2007) (applying pretrial detainee standards to an

14 immigration detainee). Therefore, if Plaintiff shows there is a genuine issue of material fact that

15 he was confined in disciplinary segregation without due process, his false imprisonment claim

16 survives summary judgment.

17        In imposing disciplinary segregation, due process requires a detainee receive: "(1)

18 advance written notice of the disciplinary charges; (2) an opportunity, when consistent with

19 institutional safety and correctional goals, to call witnesses and present documentary evidence in

20 his defense; and (3) a written statement by the factfinder of the evidence relied on and the

21 reasons for the disciplinary action." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*,

22 472 U.S. 445, 454 (1985); *see also In Re Krier*, 108 Wash.App. 31, 38 (2001) (applying the same

23 due process requirements when an inmate is facing a disciplinary hearing); *Willey v. Kirkpatrick*,

24

1   801 F.3d 51, 71 (2d Cir. 2015) (internal quotations omitted) (applying New York law and stating

2   "a plaintiff complaining of false imprisonment within solitary confinement must have

3   sufficiently pleaded that he had been subjected to punitive segregation for no legitimate reason

4   and without the rudimentary protections of due process").

5           Evidence in the record shows that, on February 10, 2018, Plaintiff was questioned by an

6   unnamed guard, shown a photograph of a bag with apples and water in it, and told he was being

7   sent to segregation. *See* Dkt. 32, Chavez Dec., ¶¶ 17, 22. Plaintiff told the guard the apples and

8   water were not his. *Id.* at ¶ 23. The guard told Plaintiff that Plaintiff would, on February 12,

9   2018, have a chance to "talk with someone like a judge from GEO to decide" whether Plaintiff

10  should be placed in segregation. *Id.* at ¶ 24. At that time, Plaintiff was provided with a written

11  document entitled Notice of Disciplinary Panel Hearing, which was signed by non-party Tracy.

12  *Id.* at ¶ 23; Dkt. 32, p. 17. An Incident Report was completed by non-party Gordon, the reporting

13  officer, and signed by non-party Tracy on February 10, 2018. Dkt. 2-2, p. 5.

14          Plaintiff was placed in segregation and told that he would have a hearing on February 12,

15  2018 to decide his segregation status. Dkt. 32, Chavez Dec., ¶ 27. No one came to talk with

16  Plaintiff on February 12, 2018. *Id.* On February 14, 2018, Plaintiff was provided with an

17  Institution Disciplinary Panel Report ("IDP Report") informing him that he was found "guilty of

18  having homemade alcohol in [his] property" and he would be in disciplinary segregation for

19  twenty days. *Id.* at ¶ 29; *see also* Dkt. 2-2, pp. 7-8. Plaintiff "did not know anything about a

20  hearing that day." Dkt. 32, Chavez Dec., ¶ 29.

21          The IDP Report stated Plaintiff was advised of his right to present a statement or remain

22  silent, present documents, including witness statements, and for relevant witnesses to appear on

23  his behalf. Dkt. 2-2, p. 7. The IDP Report includes a statement attributed to Plaintiff; however, it

24

1    is unclear when Plaintiff made this statement or if Plaintiff was present at the hearing. *Id*.

2    Additionally, the IDP Report states no witnesses were called. *Id*. at pp. 7-8. The IDP Report

3    relied on an incident report to support the finding that the alleged act was committed. *Id*. at p. 8.

4    It was signed by non-party Lt. Riach and Defendant Clark concurred with the findings. *Id*.

5          Here, Plaintiff was placed in segregation for violating a NWDC rule. Plaintiff was

6    provided with advanced written notice of the disciplinary charges and provided with a written

7    statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

8    However, Plaintiff states he was unaware of the hearings held on February 12 and 14, 2018.

9    Because Plaintiff was unaware of either hearing, there is evidence showing Plaintiff did not have

10   an opportunity to call witnesses on his behalf or present documentary evidence. As such,

11   Plaintiff was not provided with due process prior to being placed in disciplinary segregation.

12         In sum, evidence viewed in the light most favorable to Plaintiff shows Plaintiff has a

13   liberty interest in being free from disciplinary segregation and was not provided with due process

14   when he was placed in disciplinary segregation. However, while Plaintiff alleges Defendants The

15   GEO Group, Inc., Clark, McHatton, Portillo, and GEO Does 1-10 falsely imprisoned Plaintiff,

16   Plaintiff cites to no evidence showing Defendants Portillo, McHatton or any unnamed Doe

17   Defendants were involved in hearing process. *See* Dkt. 54, 68. The evidence shows only that

18   Defendant Clark had involvement in Plaintiff's placement in disciplinary segregation when

19   Defendant Clark reviewed and concurred with the findings of the Institution Disciplinary Panel.

20   *See* Dkt. 2-2, p. 8.

21         Defendant Clark is alleged to be an employee of Defendant The GEO Group, Inc. *See*

22   Dkt. 54. Washington courts have held "an employer would be vicariously liable for the tortious

23   acts of its employees, if (1) the employee was acting in furtherance of the employer's business,

24

1  and (2) he or she was acting within the course and scope of employment when the tortious act

2  was committed." *Bratton v. Calkins*, 73 Wash. App. 492, 499 (1994); *see also Robel v. Roundup*

3  *Corp.*, 148 Wash. 2d 35, 53 (2002) ("An employer can defeat a claim of vicarious liability by

4  showing that the employee's conduct was (1) 'intentional or criminal' and (2) 'outside the scope

5  of employment.'"). At this time, the record fails to show Defendant Clark was not acting in

6  furtherance of Defendant The GEO Group, Inc.'s business, or acting outside the scope of his

7  employment. As such, Defendant The GEO Group, Inc. may also be liable for falsely

8  imprisoning Plaintiff.

9        Plaintiff has shown there is a genuine issue of material fact regarding his claim of false

10  imprisonment as alleged against Defendants The GEO Group, Inc. and Clark, and as such,

11  summary judgment should be denied as to these defendants on this claim. However, as there is

12  no evidence Defendants McHatton, Portillo or GEO Does 1-10 were involved in falsely

13  imprisoning Plaintiff, summary judgment should be granted in favor of Defendants McHatton,

14  Portillo, and GEO Does 1-10 regarding whether Plaintiff was falsely imprisoned.

15        D.  Negligence

16        Plaintiff alleges GEO Defendants breached their duty of reasonable care regarding the

17  injury to Plaintiff's eye, his detention in "solitary confinement," and not providing him adequate

18  medical care to his injured eye.  Dkt. 54. GEO Defendants argue they are entitled to summary

19  judgment as to Plaintiff's negligence claims because he fails to explain what duty GEO

20  Defendants breached and what conduct breached that duty. Dkt. 60, p 14.

21        Under Washington law, to recover for negligence, plaintiff must demonstrate four things:

22  (1) the existence of a duty to plaintiff; (2) a breach of that duty; (3) a resulting injury; and (4) the

23  breach was the proximate cause of the injury. *Wuthrich v. King Cnty.*, 185 Wash. 2d 19, 25

24

1  (2016); *Lowman v. Wilbur*, 178 Wash. 2d 165, 169 (2013); *Crowe v. Gaston*, 134 Wash. 2d 509,

2  514 (1998). The threshold determination is whether a duty is owed to the plaintiff. *Taylor v.*

3  *Stevens Cnty.*, 111 Wash. 2d 159, 163 (1988).

4  Plaintiff's negligence claims require him to show GEO Defendants had a duty to Plaintiff

5  regarding the injury to his eye during a disturbance at the NWDC, his placement in disciplinary

6  segregation, and not providing him medical care for his injured eye.  Plaintiff sets forth only

7  conclusory allegations in his negligence causes of action. *See* Dkt. 54. He fails to establish that

8  duty was breached when GEO Defendants responded to the disturbance or when he was placed

9  in disciplinary segregation.  As to negligence in failing to provide medical care, the undisputed

10  facts show Plaintiff received immediate and follow-up medical care. *See* Dkt. 32, Chavez Dec.

11  The Court finds, therefore, that Plaintiff's negligence claims are without merit.  Accordingly, the

12  Court recommends the negligence claims against GEO Defendants be dismissed.

13  **IV.    CONCLUSION**

14  For the reasons stated herein, the Court recommends GEO Defendants' Motion (Dkt. 60)

15  be granted-in-part and denied-in-part. The Court recommends the false imprisonment claim

16  alleged against Defendants The GEO Group, Inc. and Clark proceed, but all other claims against

17  GEO Defendants be dismissed.

18  Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties

19  shall have fourteen (14) days from service of this Report to file written objections. *See also* FED.

20  R. CIV. P. 6. Failure to file objections will result in a waiver of those objections for purposes of

21  *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time

22

23

24

1    limit imposed by Federal Rule of Civil Procedure 72(b), the clerk is directed to set the matter for

2    consideration on October 26, 2018, as noted in the caption.

3         Dated this 10th day of October, 2018.

4

5    _____
     David W. Christel
6    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24