The Honorable Benjamin H. Settle
The Honorable David W. Christel

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
TACOMA

JESUS CHAVEZ FLORES,

    Plaintiff,

v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,

    Defendants.

Case No.  3:18-cv-05139-BHS-DWC

FEDERAL GOVERNMENT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Noted on Motion Calendar:
November 9, 2018

## I.  INTRODUCTION

COME NOW Federal Defendants United States Immigration and Customs Enforcement ("ICE"), Thomas D. Homan in his official capacity, Bryan Wilcox in his official capacity, Marc Moore in his official capacity, the "ICE Does"[1] in their official capacities, and William Penaloza in his official capacity (the "ICE defendants"), by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Sarah K. Morehead, Assistant United States Attorney for that district, and hereby file this motion for summary judgment.

---

[1] Plaintiff has never identified the "ICE Does 1-10" and has therefore failed to state a claim against any of them. Fed. R. Civ. P. 12(b)(6).

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 1

**UNITED STATES ATTORNEY**
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Plaintiff, an immigration detainee at the Northwest Detention Center, asserts a single claim against the ICE defendants for allegedly violating his First Amendment rights. Specifically, plaintiff claims that after he engaged in hunger strike, all defendants retaliated against him in violation of the First Amendment. However, the ICE defendants did not participate in most of the actions about which plaintiff complains. He has not alleged any theory for holding the ICE defendants responsible for the actions of third parties. To the contrary, there is no waiver of sovereign immunity to allow suits against a federal government entity for the actions of a third party.

Plaintiff also alleges that retaliation motivated the decision to briefly house him in segregation. In fact, plaintiff was placed in segregation after a guard discovered contraband in his locked property box. Without any evidence of retaliation, plaintiff's First Amendment claim fails as a matter of law.

## II.   FACTUAL BACKGROUND

Plaintiff is a detainee at the Northwest Detention Center ("NWDC") in Tacoma, Washington. Second Amended Complaint[2] (Dkt. #54, the "SAC") at ¶ 10. Plaintiff entered the country without inspection and is in removal proceedings. Declaration of Drew Bostock ("Bostock Decl.") at ¶ 10. Plaintiff claims that on or around February 7, 2018, he and other detainees participated in a hunger strike to protest the conditions at NWDC. SAC at ¶ 33, 34, 36.

### A. Guards at NWDC Are Employees of an Independent Contractor

---

[2] Plaintiff's recently filed and pending motion for leave to file a third amended complaint (Dkt. #87) does not affect this motion. In his proposed third amended complaint, plaintiff seeks to add two additional ICE defendants, Tim Petrie and Brian Muirhead, both in their official capacities. Dkt. #87 at ¶ 17-19. The proposed third amended complaint does not include any factual allegations regarding Mr. Muirhead. The brief allegation that Mr. Petrie signed a report is not disputed, as set forth below. *Id.* at ¶ 97.

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In his second amended complaint, plaintiff alleges that all defendants retaliated against him for his participation in a hunger strike at NWDC. The majority of his retaliation claim is based on the actions of the NWDC guards, including alleging that one of the guards punched him. *See, e.g.*, Second Amended Complaint at ¶ 46. Plaintiff readily admits that the punch, if it occurred as he alleges, was prohibited by ICE guidelines. *Id.* at ¶ 47.

Plaintiff also admits that the guard who allegedly punched him is an employee of The GEO Group, Inc.'s ("GEO"). Second Amended Complaint at ¶ 23. By contract, GEO provides the facility, management, personnel, and services for 24-hour supervision of immigrant detainees in ICE custody at NWDC. Bostock Decl. at ¶ 4. The NWDC operates pursuant to a performance-based contract, which is a results-oriented method of contracting focused on outputs, quality, and outcomes. *Id.* Performance-based contracts do not designate how a contractor is to perform the work, but rather establishes the expected outcomes and results that the government expects. *Id.* It is then the responsibility of the contractor to meet the government's requirements. *Id.*

**B. Guards Are Required to Monitor Hunger Striking Detainees for Their Health**

In an attempt to bolster his retaliation claim, plaintiff complains that GEO guards wrote down the names of detainees who refused food, "and the detainees feared retaliation." Second Amended Complaint at ¶ 53. However, detainees' food refusal is tracked to ensure the health and safety of detainees who refuse nutrition, not for any retaliatory purpose. Bostock Decl. at ¶ 7.

Conditions of detention at the NWDC are governed by the Performance-Based National Detention Standards 2011 ("PBNDS"). Bostock Decl. at ¶ 5. The PBNDS reflects ICE's

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ongoing effort to tailor the conditions of immigration detention to its unique purpose while maintaining a safe and secure environment for detainees and staff. *Id.*

The PBNDS includes protocols regarding hunger strikes. A "hunger strike" is defined by PBNDS 7.5 as a "voluntary fast undertaken as a means of protest or manipulation." Bostock Decl. at ¶ 6. The same detention standard provides, "Whether or not a detainee actually declares that he or she is on a hunger strike, staff are required to refer any detainee who is observed to not have eaten for 72 hours for medical evaluation and monitoring." *Id.*

Per the detention standards, all facilities must notify the local ICE Field Office Director or his/her designee when an ICE detainee begins a hunger strike. Bostock Decl. at ¶ 9 (citing PBNDS 4.2(V)(B)). When a detainee is deemed to meet the definition of being on a hunger strike, ICE initiates the hunger strike protocol in PBNDS 4.2, which sets forth a very specific process for monitoring the detainee's food and liquid intake medical monitoring for the detainee's health and safety, and mental health assessment. *Id.* at ¶ 8 (citing PBNDS 4.2(V)). Hunger strike protocols were never instituted for Chavez Flores, who was never observed to have missed nine consecutive meals. *Id.* at ¶ 9.

**C. Guards Discovered Contraband in Plaintiff's Property Box**

Detention officers are required to search detainees' property daily. Portillo Decl. (Dkt. #23) at ¶ 15. Searches of detainees' property are required to enhance facility security, good order, and safety for personnel and detainees. Bostock Decl. at ¶ 14.

On February 10, 2018, the housing unit detention officer found fermenting fruit in a bag of water in the locked property box belonging to plaintiff. Amended Mell Decl., Dkt. #25, Ex. H (explaining that he found fermenting fruit in plaintiff's property box). Detainees sometimes ferment fruit in bags of water to make inmate manufactured alcohol, also called "pruno."

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Declaration of Tim Petrie ("Petrie Decl.") at ¶ 4.  Typically, pruno is made in plastic bags because the bags are easy to hide and they allow for expansion during fermentation.  *Id.*

Detainee possession of pruno is a violation of the facility's rules.  Petrie Decl. at ¶ 4.  The PBNDS prohibits detainees from possessing alcohol or adulterated food or drink.  *Id.* (citing PBNDS Section 210).  As a result, plaintiff was issued proposed discipline for violating Section 210 —Adulteration of food or drink.  Dkt. #2-1.  Plaintiff was referred to the Unit Disciplinary Committee ("UDC") for the charged violation.  Dkt. #2-1.  Pending review by the UDC, plaintiff was assigned administrative detention to the Restrictive Housing Unit ("RHU") based on a finding that such detention was necessary "to protect the security and orderly operation of the facility."  *Id.*  A UDC hearing was conducted, and a second hearing by the Institution Disciplinary Panel ("IDP") was conducted.  Dkt. #2-2.  The IDP hearing took place in the doorway of plaintiff's cell in the administrative segregation unit of the RHU.  Petrie Decl. at ¶ 11.  Plaintiff requested an interpreter at the IDP hearing, and a certified interpreter was provided who interpreted the entire proceedings into Spanish.  *Id.*  Following those procedures, the IDP determined that plaintiff committed the infraction alleged.  *Id.* at ¶ 14.  Plaintiff was issued twenty days disciplinary detention.  *Id.* at ¶ 17.  Plaintiff was released from segregation on March 1, 2018.  *Id.*

**D.  ICE Employees Had Limited Involvement in Plaintiff's Segregation**

Two ICE employees had very limited roles regarding plaintiff's segregation, and both participated as part of larger committees.  First, ICE employee Tim Petrie participated in the IDP hearing as the ICE representative and signed the IDP report because he believed that based on all of the evidence presented, plaintiff possessed adulterated food or drink in violation of the facility's rules.  Petrie Decl. at ¶ 16.

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Second, pursuant to the PNBDS, a multi-disciplinary committee meets weekly to review all detainees currently in the NWDC's Special Management Units, which include administrative segregation and disciplinary segregation. Bostock Decl. at ¶ 12. The committee includes facility leadership, medical and mental health professionals, and security staff. *Id.* Assistant Field Office Director Drew Bostock participated as the ICE representative for the reviews that occurred on February 15, 2018, and February 22, 2018, while plaintiff was in segregation. *Id.* Mr. Bostock signed the lists for both of those days. *Id.*; *id.* at Exhibit A. Mr. Bostock believed that plaintiff's continued detention in segregation was warranted because possession of adulterated food or drink is a serious offense. *Id.* at ¶ 13.

## III.   ANALYSIS

### A. Standards for a Motion for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The moving party bears the initial burden of informing the Court of the basis of his motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, which he believes demonstrate the absence of a genuine issue of material fact. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets his initial burden, the burden then shifts to the nonmoving party to present specific facts showing a genuine issue for trial. *See, e.g., Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *See Celotex*, 477 U.S. at 322-23. A mere scintilla of evidence in support of the nonmoving party's position is not sufficient. *See, e.g., Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

party must introduce some "significant probative evidence tending to support the complaint." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003) (citation and quotation omitted). "Conclusory allegations unsupported by factual data are not enough." *Id.* "In other words, 'summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor.'" *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citation omitted). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 324.

### B. Plaintiff Cannot Assert any Claim Against the Federal Defendants Based on the Alleged Assault or Reclassification

Plaintiff asserts only one of his four causes of action against the federal defendants, alleging that the federal defendants violated his First Amendment right to freedom of expression.[3] Second Amended Complaint at ¶ 105-110. To support that allegation, plaintiff claims that after he engaged in a hunger strike to protest conditions, "Defendants violated Plaintiff's right to freedom of speech and freedom of expression by assaulting him, placing him in solitary confinement, and changing his security level in retaliation for his free speech activities." *Id.* at ¶ 107.

However, plaintiff's second amended complaint does not allege that the federal defendants assaulted him. Rather, he alleges that a GEO employee did so. Second Amended Complaint at ¶ 23, 42-43, 46 (alleging that GEO guards assaulted him). Although he vaguely

---

[3] Because plaintiff alleges only a First Amendment claim against the ICE defendants, the Court's recent Report and Recommendation recommending that the Court deny GEO's motion for summary judgment on plaintiff's state law false imprisonment claim has no bearing on the ICE defendants.

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

implies that the ICE defendants were somehow responsible for the assault, plaintiff concedes that "ICE guidelines" "specifically prohibited" the use of force he allegedly experienced. *Id.* at ¶ 47. Plaintiff has not alleged any waiver of sovereign immunity that would allow him to pursue a claim against the ICE defendants for the actions of a third party. *See, e.g.*, *Diaz v. Vitiello*, Case No. 18-1356-BHS-TLF (Dkt. #26 at p. 4) (W.D. Wash. Sept. 19, 2018) (holding, "the Federal Defendants are entitled to sovereign immunity" and are not liable for the allegedly retaliatory actions of GEO employees); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

Even if plaintiff were trying to assert an unexhausted claim under the Federal Tort Claims Act ("FTCA"), the FTCA expressly prohibits the United States' liability for negligent actions by "any contractor with the United States." 28 U.S.C. § 2671 (emphasis added). Therefore, "the federal government is not liable for torts committed by its contractors." *United States v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1146 (9th Cir. 2004). By logical extension of this statutory mandate, the federal government also "cannot be held vicariously liable for the negligence of an employee of an independent contractor." *Yanez v. United States*, 63 F.3d 870, 872 (9th Cir. 1995). The FTCA also explicitly excludes, and therefore does not waive sovereign immunity for, certain intentional torts including the assault that plaintiff alleges. 28 U.S.C. § 2680(h). The statutory exemptions in the FTCA highlight that the United States has not waived its sovereign immunity for actions by independent contractors or their employees. Therefore, plaintiff has not alleged facts or a plausible legal theory for holding the ICE defendants liable for an assault he claims to have suffered at the hands of a GEO guard.

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Similarly, plaintiff vaguely alleges that all defendants violated his First Amendment rights by "changing his security level in retaliation for his free speech activities." Second Amended Complaint at ¶ 107. However, plaintiff does not identify who changed his security classification. *See id.*; *see also id.* at ¶ 101. PBNDS Section 2.2(H)(3) requires NWDC staff, who are GEO employees, to complete a special reclassification assessment within 24 hours of when a detainee leaves the Special Management Unit, which includes disciplinary segregation. Bostock Decl. at ¶ 16. ICE employees were not involved in the decision to reclassify plaintiff. *Id.* Accordingly, he cannot assert a claim against the ICE defendants based on that decision.

**C. Plaintiff's Claim Based on His Segregation Is Untenable**

Plaintiff also claims that the ICE defendants retaliated against him by "placing him in solitary confinement." Second Amended Complaint at ¶ 107. Where, as here, a prisoner or detainee claims that his First Amendment rights were violated through some act of retaliation, courts evaluate whether the plaintiff has established the following five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id*. (quoting *Sandin*, 515 U.S. at 482).

Solely for purposes of this motion, the ICE defendants will assume that plaintiff participated in a hunger strike, that his actions in doing so were protected by the First Amendment, and that he felt chilled from further participation. However, he cannot meet any of the other required elements to establish his retaliation claim.

### 1. Plaintiff Has No Evidence that Any Adverse Action Was Because of His Alleged Speech Activities

Plaintiff cannot show that any ICE employee took any adverse action against him *because of* his alleged hunger strike. To prevail on a retaliation claim, a plaintiff must show that his protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). To show the presence of this element on a motion for summary judgment, plaintiff must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the official's] intent" in meting out the adverse action. *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

Timing alone is insufficient to demonstrate causation. "Although timing can be considered as circumstantial evidence of retaliatory action, timing alone is generally not sufficient to establish retaliation." *Ventress v. Castillo*, Case No. 17-05094-BHS-TLF, 2018 U.S. Dist. LEXIS 160434, at *8 (W.D. Wash. Aug. 23, 2018) (citing *Pratt*, 65 F.3d at 808), Report and Recommendation adopted at 2018 U.S. Dist. LEXIS 160164 (W.D. Wash., Sept. 19, 2018). Instead of relying on timing alone, the "[o]verall circumstances of the alleged retaliation must be considered and not simply the order of the events." *Id.*; *see also Ayers v. Richards*, Case No. 08-5541-RJB-KLS, 2010 U.S. Dist. LEXIS 126455, *21 (W.D. Wash. Nov. 4, 2010)

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

("Retaliation is not proven by simply showing that a defendant prison official took adverse action after he knew that the plaintiff prisoner had engaged in constitutionally protected activity."), Report and Recommendation adopted at 2010 U.S. Dist. LEXIS 126718 (W.D. Wash., Dec. 1, 2010) (granting summary judgment on plaintiff's First Amendment retaliation claim).

In this case, plaintiff has no evidence of a retaliatory motive. There is no evidence that any ICE official employee expressed any opposition to — or any opinion at all about — his alleged hunger strike. *See, e.g., Fields v. Banuelos*, 2012 U.S. Dist. LEXIS 132474 (E.D. Cal. Sept. 17, 2012) (granting motion for summary judgment on prisoner's First Amendment retaliation claim when he was disciplined for possessing pruno; finding, "There is no evidence that Defendant expressed opposition to the Plaintiff's litigation or litigation in general, and there is no other evidence that the reasons proffered by Defendant for the search and confiscation were false and pretextual.").

Plaintiff alleges that a retaliatory motive is demonstrated by irregularities in his disciplinary proceedings.[4] First, he alleges that he received various documents related to the process only in English. However, even if that allegation were true, it does not support a claim against the ICE defendants, who were not responsible for providing and did not provide those documents to plaintiff. Bostock Decl. at ¶ 15. Second, plaintiff alleges that he was not informed about and so did not attend either the UDC or the IDP hearing. Second Amended Complaint at ¶ 84, 88. However, ICE employees were not involved in the UDC proceedings, and a UDC hearing was not required for plaintiff's "high" level offense. Petrie Decl. at ¶ 5, 10. Plaintiff's claim that he did not know about the IDP hearing is both vague and contradicted by the record.

---

[4] Tellingly, plaintiff does not allege any due process claim against the ICE defendants.

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 11

**UNITED STATES ATTORNEY**
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Plaintiff's Decl., (Dkt. #32) at ¶ 29 (referring to the IDP hearing and stating, "I did not know anything about a hearing that day."). Plaintiff's declaration does not state that he did not attend the hearing. In fact, an ICE official has stated in a sworn declaration that plaintiff was informed that the hearing was rescheduled to February 14, plaintiff attended the IDP hearing, which was held in the doorway of his segregation cell, the proceedings were interpreted for him, and he made a statement. Petrie Decl. at ¶ 11. Regardless, the ICE defendants were not responsible for notifying plaintiff of the proceedings or securing his attendance. *Id.* at ¶ 9. Prior to this lawsuit, the ICE defendants were not aware of any allegation that plaintiff did not receive notice or documentation, a claim which is contradicted by written documentation in the record. Petrie Decl. at ¶ 10, 11, 13; Bostock Decl. at ¶ 15.

Plaintiff also argues that when guards searched his property on February 10, 2018, they stated in a form that he "had no property that needed to be confiscated." Plaintiff's Declaration (Dkt. # 2-1) at ¶ 19. Regardless of the truth of that statement, it is irrelevant. Although the search of plaintiff's bunk revealed no contraband, the search of his property box did. Mell Decl. (Dkt. # 25), Ex. H.

Plaintiff also suggests, without any evidence in support, that some unnamed GEO guard planted the contraband in his property box while the guards told him to visit the medical unit. Even if that improbable claim were true, plaintiff provides no evidence of a retaliatory motive by the ICE defendants. To the contrary, the ICE official who was involved in the segregation decision reasonably believed what the GEO guard found and stated in his signed Incident Report: plaintiff had homemade alcohol in his property box. Petrie Decl. at ¶ 12-14. The ICE defendants were not required to believe plaintiff's predictable and self-serving assertion of innocence. Mere speculation about a retaliatory motive is insufficient to meet plaintiff's burden

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to show causation. *See, e.g.*, *Sutton v. Heaward*, Case No. 17-5546-RJB-TLF, 2018 U.S. Dist. LEXIS 146454, at *19 (W.D. Wash. Aug. 8, 2018) ("Speculation and innuendo cannot substitute for rebuttal evidence that defendants knew of plaintiff's litigation and were substantially motivated by it."), Report and Recommendation adopted at 2018 U.S. Dist. LEXIS 146291 (W.D. Wash., Aug. 28, 2018) (granting defendant's motion to dismiss prisoner/plaintiff's First Amendment retaliation claim); *Stone v. Becerra*, 2010 U.S. Dist. LEXIS 118311, *18-19 (E.D. Wash. Nov. 8, 2010) (holding that prisoner's conclusory claim that an officer made a false statement was insufficient to survive a motion to dismiss on a retaliation claim). Here, there is no evidence that the expressed reason for the discipline – ICE officials believed plaintiff violated a disciplinary rule — was untrue.

In the analogous context of an employment discrimination claim, a plaintiff cannot prove retaliation by demonstrating that the employer's articulated reasons for an adverse action were "objectively false" or that the employer made a mistake. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). "Rather, courts 'only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless.'" *Id.* (quoting *Johnson v. Nordstrom, Inc.,* 260 F.3d 727, 733-34 (7th Cir. 2001)); *see also Essex v. UPS*, 111 F.3d 1304, 1310 (7th Cir. 1997) ("In examining pretext, the question is whether the employer honestly believed its proffered reason for [the adverse action]. The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual."). Similarly, here, even if the contraband did not belong to plaintiff as he claimed, plaintiff has no evidence that the ICE defendants knew it did not belong to him or sought to retaliate against him.

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Finally, a retaliation claim is not plausible if there are "'more likely explanations'" for the challenged action. *Knippling v. Robbins*, Case No. 15-05829-RJB-JRC, 2017 U.S. Dist. LEXIS 35652 (W.D. Wash. Feb. 17, 2017) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009), and citing *Pratt*, 65 F.3d at 808), Report and Recommendation adopted at 2017 U.S. Dist. LEXIS 35662 (W.D. Wash., Mar. 13, 2017).  Here, it is far more likely that the ICE defendants approved of plaintiff's segregation because he violated a prison rule, as documented by a GEO guard, rather than to retaliate against him for allegedly participating in a hunger strike.

In sum, plaintiff has not demonstrated that the ICE defendants took any action against him because of his alleged speech.

### 2. Plaintiff's Detention Served a Legitimate Correctional Goal

Plaintiff's retaliation claim fails for a second reason: his placement in segregation served a legitimate correctional goal.  To prevail on a retaliation claim, a prisoner must show that the challenged action "did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 568; *accord Pratt*, 65 F.3d at 808 (prisoner must demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of.").  The prisoner bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.  *Pratt*, 65 F.3d at 806.

In this case, the PBNDS clearly states that detainees may be housed in disciplinary segregation for up to thirty days for the infraction of possessing adulterated food or drink, which is considered a "high" offense.  *See* PBNDS 3.1(V)(C)(2); Appendix 3.1.A(II)(B).  Plaintiff's possession of pruno was problematic because pruno presents a significant security hazard to staff and residents, particularly when a resident under the influence of pruno acts out.  Petrie Decl. at ¶ 4.

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In a factually similar case, the Ninth Circuit affirmed a district court's grant of summary judgment. *Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994). In *Barnett*, plaintiff possessed homemade alcohol, and he claimed that his resulting reclassification was actually retaliation for filing a civil rights action. The Ninth Circuit granted the government's motion for summary judgment, finding that plaintiff's reclassification served the legitimate penological purpose of maintaining prison discipline. *Barnett*, 31 F.3d at 816. Similarly, here, plaintiff's short-term placement in disciplinary segregation served the legitimate penological purpose of maintaining discipline in the facility. A clear rule at the NWDC prohibited possession of adulterated food or drink, and the only two ICE officials who approved plaintiff's segregation both reasonably believed plaintiff violated that rule. Petrie Decl. at ¶ 12-14, 16; Bostock Decl. at ¶ 13, 14. "Enforcing valid prison rules advances legitimate penological goals." *Ventress*, Case No. 17-05094-BHS-TLF, 2018 U.S. Dist. LEXIS 160434, at *11; *see also Fields*, 2012 U.S. Dist. LEXIS 132474 (finding, "Institutional security is unquestionably a legitimate correctional goal," and plaintiff violated a prison rule by possessing pruno).

Finally, plaintiff's professed innocence of the charge does not demonstrate the lack of a legitimate penological purpose. Although knowingly placing innocent detainees in disciplinary segregation would not serve a legitimate penological interest, plaintiff has submitted no evidence, other than his own self-serving statement, that he was innocent of the charges. Regardless, there is no evidence that the ICE defendants knew he was innocent. As such, he cannot prove the absence of a penological purpose for his brief segregation. *See, e.g.*, *Sutton*, Case No. 17-5546-RJB-TLF, 2018 U.S. Dist. LEXIS 146454, at *21 (recommending granting motion for summary judgment where "plaintiff has submitted no evidence that the defendants knew he was innocent when they infracted him."); *see also Basra v. Morgan*, Case No. 16-

Motion for Summary Judgment  
[Case No. 3:18-cv-05139-BHS-DWC]- 15

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

06005-RBL-JRC, 2017 U.S. Dist. LEXIS 213909 (W.D. Wash. Nov. 1, 2017) (explaining that although plaintiff disputed that he violated a prison rule, "defendants have submitted evidence that prison officials believed, and had evidence supporting their belief" that plaintiff violated the rule), Report and Recommendation adopted at 2018 U.S. Dist. LEXIS 933 (W.D. Wash., Jan. 3, 2018).

Therefore, plaintiff cannot demonstrate that his segregation failed to advance a legitimate penological goal.

## IV. CONCLUSION

For all of the foregoing reasons, the ICE defendants respectfully request that the Court grant their motion for summary judgment.

DATED this 18th day of October, 2018.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*s/ Sarah K. Morehead*
SARAH K. MOREHEAD, WSBA No. 29680
Assistant United States Attorney
Western District of Washington
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
E-mail: sarah.morehead@usdoj.gov

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Western District of Washington and is a person of such age and discretion as to be competent to serve papers;

It is further certified that on this date, I electronically filed the foregoing motion, the Declaration of Drew Bostock, the Declaration of Tim Petrie, and the Proposed Order with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant(s):

| | |
|---|---|
| Eunice Cho | echo@aclu-wa.org |
| Emily Chiang | echiang@aclu-wa.org |
| Joan K. Mell | joan@3brancheslaw.com |
| Antoinette Marie Davis | tdavis@aclu-wa.org |
| Daniel M. Weiskopf | dweiskopf@mcnaul.com |
| Theresa M. DeMonte | tdemonte@mcnaul.com |

I further certify that on this date, I mailed, by United States Postal Service, the foregoing to the following non-CM/ECF participant(s), addressed as follows:

-0-

DATED this 18th day of October, 2018.

       *s/ Julene Delo*
JULENE DELO, Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax:   206-553-4067
E-mail:  julene.delo@usdoj.gov

Motion for Summary Judgment
[Case No. 3:18-cv-05139-BHS-DWC]- 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970