District Judge Benjamin Settle
Magistrate Judge David W. Christel

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESUS CHAVEZ FLORES,

     Plaintiff,

v.

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT, *et al.*,

     Defendants.

CASE NO.  3:18-cv-05139-BHS-DWC

DECLARATION OF
DREW H. BOSTOCK

     I, Drew H. Bostock, hereby make the following declaration with respect to the above-captioned matter:

     1.     I am an Assistant Field Officer Director ("AFOD") with the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") in the Seattle Field Office ("ERO Seattle").  I have held this

1  position since December 2017.  I am currently assigned to the Northwest Detention Center

2  ("NWDC") in Tacoma, Washington.  I have worked in various other positions within ICE since

3  February 2007.

4

5  2.      Among my responsibilities as an AFOD, I manage the detained docket for the aliens who

6  are detained at the NWDC.  This declaration is based upon my personal and professional

7  knowledge, information obtained from other individuals employed by ICE, and information

8  obtained from various records and systems maintained by DHS and The GEO Group, Inc. in the

9

10 regular course of business.  I provide this declaration based on the best of my knowledge,

11 information, belief, and reasonable inquiry for the above captioned case.

12 3.      ICE is charged with removing aliens who lack lawful immigration status in the United

13 States.  Detention is an important and necessary part of immigration enforcement.  ICE detains

14

15 people for no other purpose than to secure their presence both for immigration proceedings and

16 their removal, with a special focus on those who represent a risk to public safety, or for whom

17 detention is mandatory by law.

18 4.      The NWDC is a private detention center run by The GEO Group, Inc. ("GEO").  GEO is

19 an independent contractor that provides the facility, management, personnel and services for 24-

20

21 hour supervision of immigrant detainees in ICE custody at the NWDC.  GEO personnel are not

22 employed by ICE.  The NWDC operates pursuant to a performance-based contract, which is a

23 results-oriented method of contracting focused on outputs, quality, and outcomes.  Performance-

24

25 based contracts do not designate how a contractor is to perform the work, but rather establishes

26 the expected outcomes and results that the government expects.  It is then the responsibility of

27 the contractor to meet the government's requirements.

28

DREW H. BOSTOCK DECLARATION
Case No. 18-5139-BHS-DWC - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5.      Because ICE exercises significant authority when it detains people, ICE must do so in a humane manner, with a focus on providing sound conditions and care.  Conditions of detention at the NWDC are governed by the Performance-Based National Detention Standards 2011 ("PBNDS").  The PBNDS reflects ICE's ongoing effort to tailor the conditions of immigration detention to its unique purpose while maintaining a safe and secure detention environment for detainees and staff.

6.      ICE's hunger strike policies are grounded in the need for it to maintain the security and orderly operations within the facility, safeguard life, and preserve resources.  A "hunger strike" is defined in PBNDS 7.5 as a "voluntary fast undertaken as a means of protest or manipulation." The same detention standard states that "[w]hether or not a detainee actually declares that he or she is on a hunger strike, staff are required to refer any detainee who is observed to not have eaten for 72 hours for medical evaluation and monitoring."

7.      ICE hunger strike protocol is specifically governed by PBNDS 4.2. Under this protocol, a detainee is considered to be on a hunger strike when the detainee is observed not to have eaten for 72 hours.  *See* PBNDS 4.2(V)(B)(1).  In practice, this means that a detainee must be observed to not eat nine consecutive meals to be deemed to be on a hunger strike.  To maintain accurate information about which detainees may be at a health risk because they are not eating, GEO officers are required to enter a detainee's name and alien registration number (A-number) into the housing unit's logbook whenever a detainee refuses a meal.

8.      At the time that a detainee is deemed to meet the detention standard for being on a hunger strike, ICE initiates the hunger strike protocol in PBNDS 4.2, which sets forth a very specific process for monitoring the detainee's food and liquid intake, medical monitoring for the detainee's health and safety, and mental health assessment.  *See* PBNDS 4.2(V).

DREW H. BOSTOCK DECLARATION
Case No. 18-5139-BHS-DWC - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9.      Per the detention standards, all facilities must notify the local ICE Field Office Director or his/her designee when an ICE detainee begins a hunger strike. *See* PBNDS 4.2(V)(B). At the NWDC, I am the designee who must be notified in the event a detainee at the NWDC is observed to be on hunger strike. ICE was unaware that Detainee Chavez Flores considered himself to be on a hunger strike until the evening of February 8, 2018 when ICE was notified by GEO of the disruption in pod C3 earlier that afternoon which had necessitated the lockdown of the unit to maintain order and security and had resulted in an inadvertent (unplanned) use of force by a GEO employee on Chavez Flores. Hunger strike protocols were never initiated for Chavez Flores because he was not observed to have missed nine consecutive meals.

10.     Detainee Jesus Chavez Flores is a citizen of Mexico who is currently detained by ICE at the NWDC in Tacoma, Washington. He entered the United States without inspection on an unknown date. On November 3, 2017, Chavez Flores was convicted in the Kitsap County Superior Court for the offense of attempted kidnapping in the first degree. Chavez Flores was encountered by ICE in the Yakima County Jail on December 27, 2017 following an arrest for an alcohol violation. Chavez Flores was transferred into ICE custody on January 10, 2018 and taken to the NWDC, where he was served a Notice to Appear, charging him with inadmissibility under section 212(a)(6)(A)(i) of the Immigration and Nationality Act. His removal proceedings are currently pending before the Immigration Court in Tacoma, Washington.

11.     On February 12, 2018, I participated in the Use of Force – After Action Review to review the inadvertent (unplanned) use of force by a GEO guard on Chavez Flores on February 8, 2018. At the time and now, I believed the information contained in the after action report (Dkt. #22) to be true based on the information available to me.

DREW H. BOSTOCK DECLARATION
Case No. 18-5139-BHS-DWC - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12.     Pursuant to the PBNDS, a multi-disciplinary committee meets weekly to review all detainees currently in the NWDC's Special Management Units, which include administrative segregation and disciplinary segregation. *See* PBNDS 2.12(V)(A)(3).  The committee includes facility leadership, medical and mental health professionals, and security staff. *Id.* During the meeting, the committee reviews each detainee individually to ensure all staff are aware of the detainee's status, current behavior, and physical and mental health, and to consider whether any change in status is appropriate. *Id.* I participated in the review as the ICE representative for the two weeks Chavez Flores was in segregation, with reviews conducted on February 15, 2018, and February 22, 2018.  I signed the lists for both of those days; a true and correct copy of both lists is attached as Exhibit A.  Because Chavez Flores was released from segregation on March 1, 2018, his custody was not reviewed on that day.

13.     I believed that Chavez Flores' continued detention in segregation on February 15 and 22, 2018 was warranted because he was given 20 days disciplinary segregation for possessing contraband in his locked property box.  Possession of Adulterated Food or Drink, such as the fermenting fruit that Chavez Flores possessed, is a violation of the standards of conduct. *See* PBNDS Appendix 3.1A(II)(A) (listing adulteration of food/drink in the category of a "high" offense).  Possession of adulterated food or drink at the NWDC is prohibited to maintain discipline, safety, and order at the facility.

14.     When I reviewed Chavez Flores' continued placement in segregation, I believed that he had committed the offense alleged.  Detainees frequently deny that contraband is theirs to avoid discipline.  Periodic searches of detainees' property are required under the PBNDS to enhance facility security, good order, and safety for personnel and detainees. *See* PBNDS 2.10(V)(C).

DREW H. BOSTOCK DECLARATION
Case No. 18-5139-BHS-DWC - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15.     I understand that in this lawsuit, Chavez Flores is claiming that he did not receive notice of the UDC and IDP proceedings, and he did not receive translated copies of documents related to those hearings.  When I participated in the multi-disciplinary committee, I was not aware of any of those allegations.

16.     I understand that Chavez Flores is claiming that after he refused meals, his security classification level was changed.  According to the PBNDS, detainees are classified based on a formal classification process for managing and separating detainees based on verifiable and documented information.  *See* PBNDS 2.2(I).  The classification system is used to categorize detainees and physically separate them in accordance with those classification levels in order to protect detainees, staff, contractors, volunteers and the community from harm and to contribute to orderly facility operations.  *Id.*  According to the PBNDS, classification and reclassification of detainees is based on a variety of factors, including but not limited to the detainee's general case status, criminal history, disciplinary record while in custody, and any special needs.  Classification processes and standards are set forth in PBNDS 2.2.  Section 2.2(H) covers reclassification.  Section 2.2(H)(3) requires staff, who at the NWDC are GEO employees, to complete a special reclassification assessment within 24 hours of a detainee's release from the Special Management Unit, which includes disciplinary segregation.  Detainees may appeal classification decisions.  *See* PBNDS 2.2(V)(I).  The procedures by which a detainee may appeal his or her classification are explained in the *ICE Detainee Handbook*, which is provided to every ICE detainee at the NWDC when they are processed into the facility.  *See* PBNDS 2.2(V)(K).  Any appeal of a detainee's security classification is also heard and decided by GEO employees.  I did not participate in any decision to reclassify Chavez Flores, and to the best of my

DREW H. BOSTOCK DECLARATION
Case No. 18-5139-BHS-DWC - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   knowledge, neither did any other ICE employee.  To my knowledge, Chavez Flores did not

2   appeal the reclassification decision made by GEO after his release from disciplinary segregation.

3   17.     To my knowledge, I have never had a conversation with Detainee Chavez Flores.  I have

4

5   never retaliated against him (or encouraged others to do so) for refusing meals, engaging in a

6   hunger strike, or encouraging others to miss meals or engage in a hunger strike.

7           Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is

8   true and correct to the best of my knowledge and belief.

9

10          Executed this 16th day of October, 2018.

11

12          _____

13          Drew H. Bostock
            Assistant Field Office Director
14          U.S. Department of Homeland Security
            U.S. Immigration and Customs Enforcement
15          Tacoma, WA

16

17

18

19

20

21

22

23

24

25

26

27

28

DREW H. BOSTOCK DECLARATION
Case No. 18-5139-BHS-DWC - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970