District Judge Benjamin Settle
Magistrate Judge David W. Christel

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JESUS CHAVEZ FLORES,<br><br>Chavez Flores,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>Defendants. | CASE NO. 3:18-cv-05139-BHS-DWC<br><br>DECLARATION OF<br>TIM PETRIE |

I, Tim Petrie, hereby make the following declaration with respect to the above-captioned matter:

1. I am a Supervisory Detention and Deportation Officer ("SDDO") with the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") in the Seattle Field Office ("ERO Seattle"). I have held this position since 2015. I am currently assigned to the Northwest Detention Center

DECLARATION OF TIM PETRIE
Case No. 18-5139-BHS-DWC - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

segment omitted
("NWDC") in Tacoma, Washington. I have worked in various other positions within ICE since 2007 and within the legacy Immigration and Naturalization Service since 1996.

2. This declaration is based upon my personal and professional knowledge, information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by DHS and The GEO Group, Inc. ("GEO") in the regular course of business. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry for the above captioned case.

3. Conditions of detention at the NWDC are governed by the Performance-Based National Detention Standards 2011 ("PBNDS"). Section 3.1 of the PBNDS prohibits detainees from possessing alcohol or adulterated food or drink.

4. According to paperwork in his detention file, Chavez Flores was referred to the Unit Disciplinary Committee ("UDC") for the charge of Adulteration of Food or Drink after a guard employed by GEO found fermenting fruit in a plastic bag with water in his property box. Detainees sometimes ferment fruit to make inmate manufactured alcohol, also called "pruno." Typically, pruno is made in plastic bags because the bags are easy to hide and they allow for expansion during fermentation. Detainee possession of pruno is a violation of the facility's regulations. GEO's Policy and Procedure Manual lists Adulteration of Food or Drink as a Category II offense; the categories range from Category I, which comprise greatest offenses, to Category IV. According to the PBNDS, offenses are ranked in severity in the following levels from most to least serious: "Greatest" offenses, "High" offenses, "High Moderate" offenses, and "Low Moderate" offenses. Adulteration of food or drink is a "High" category offense. *See* PBNDS Appendix 3.1.A. Possessing adulterated food or drink is considered a "High" offense

DECLARATION OF TIM PETRIE
Case No. 18-5139-BHS-DWC - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

because pruno presents a significant security hazard to staff and residents, particularly when a resident under the influence of pruno acts out.

5.  The UDC is comprised of up to three members, at least one of whom is a supervisor, who conduct and/or oversee a disciplinary hearing. *See* PBNDS 3.1(V)(F). The UDC is designed to adjudicate and impose minor sanctions for low and intermediate level offenses. *See* PBNDS 3.1(V)(F). The UDC cannot impose sanctions for "High" category offenses. *See* PBNDS 3.1(II)(11). In disciplinary matters involving "High" category offenses, the UDC's role is limited to referring the matter to a higher level disciplinary panel called the Institutional Disciplinary Panel ("IDP"). *See* PBNDS 3.1(II)(10); 3.1(V)(F). Per PBNDS 3.1(V)(F), the UDC may refer "High" category disciplinary cases to the IDP without a hearing. No ICE employees participated in or oversaw the UDC process regarding Chavez Flores.

6.  Pending review by the UDC, Chavez Flores was assigned administrative detention, also known as administrative segregation, in the Restrictive Housing Unit ("RHU") based on a finding that such detention was necessary "to protect the security and orderly operation of the facility" as set forth in the Administrative Detention Order previously filed with the Court at Dkt. # 2-1. Based on my review of records kept in the ordinary course of business, no ICE employee was involved in the decision to place Chavez Flores in administrative detention.

7.  According to the PBNDS, administrative segregation is different from disciplinary segregation. *See* PBNDS 2.12(V)(A); 3.1(II). Administrative segregation is a nonpunitive status in which restricted conditions of confinement are necessary. *See* PBNDS 2.12(V)(A). A detainee may be placed in administrative segregation for a variety of reasons, including for their own safety or medical reasons. "A detainee may be placed in administrative segregation when the detainee's continued presence in the general population poses a threat to life, property, self,

DECLARATION OF TIM PETRIE
Case No. 18-5139-BHS-DWC - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

staff, or other detainees; for the secure and orderly operation of the facility; for medical reasons; or under other circumstances set forth below." *See* PBNDS at 2.12(II)(3), previously filed at Dkt. # 2-2. Specifically enumerated reasons for placing a detainee in administrative segregation include, but are not limited to, "A detainee is awaiting an investigation or a hearing for a violation of facility rules." *Id.*

8. Following the procedures set out in the PBDNS and enumerated above, the UDC panel met on February 12, 2018 and referred the disciplinary matter involving Chavez Flores for a disciplinary hearing before the IDP because the offense with which he had been charged was a "High" category offense. The IDP was scheduled for February 14, 2018 at 10:30.

9. I did not know until this litigation commenced that Chavez Flores was claiming that he did not receive paperwork about the IDP hearing and other disciplinary paperwork, that he did know about the hearing, or that he did not attend either the UDC or the IDP hearing. ICE employees are not responsible for giving a copy of the Incident Report, Administrative Detention Order, the Notice of Disciplinary Panel Hearing, the Institution Disciplinary Panel Report, or any related documentation to the detainee. To the extent any requirement exists to provide the detainees with any disciplinary-related documents, GEO is responsible for providing them pursuant to the PBNDS. Nor are ICE employees responsible for ensuring that the detainee attends an IDP or UDC proceeding.

10. I understand that Chavez Flores admits that he received notice that the UDC hearing would take place on February 12, 2018 at 11:00 but claims that the UDC hearing was held without his attendance. I also understand that Chavez Flores claims he was not provided a copy of the UDC decision or given notice, formal or informal, of the IDP hearing. As previously stated, the UDC is not required to hold a hearing in order to refer a "High" category offense

DECLARATION OF TIM PETRIE
Case No. 18-5139-BHS-DWC - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

disciplinary case to the IDP. *See* PBNDS 3.1(V)(F). Further, ICE employees were not present during the UDC hearing for Chavez Flores on February 12th. However, my review of documentation produced in the normal course of business indicates that a Notice of Disciplinary Panel Hearing informing Chavez Flores that the UDC was referring him to the IDP based on the charge of adulteration of food/drink was served by GEO on Chavez Flores both in written form and interpreted orally into his native language on February 12, 2018 at 11:00. *See* Exhibit A (a true and correct copy of the Notice of Disciplinary Hearing, dated Feb. 12, 2018). In addition, the notice advises that the IDP hearing was scheduled for February 14, 2018 at 10:30 in unit D3. *Id.* Unit D3 is the administrative segregation unit at NWDC in which Chavez Flores was detained while awaiting a disciplinary hearing. It also indicates that Chavez Flores expressed a desire to have an interpreter for the IDP hearing. *Id.* In addition, Chavez Flores' detention file contains a Notice of Detainee Rights for an IDP hearing in both Spanish and English which indicates it was served by GEO on the same date. *See* Exhibit B (a true and correct copy of the Notice of Detainee Rights, Feb. 12, 2018). A detainee who is illiterate or has limited English language skills has a right to a staff representative to assist him or her at an IDP hearing. *See* PBNDS 3.1(II)(12). Chavez Flores' detention file contains a Notice of Staff Representative Duties that indicates it was also served on him by GEO on February 12, 2018 and that it was interpreted into Spanish. *See* Exh. C (a true and correct copy of the Notice of Staff Representative Duties, Feb. 12, 2018). This notice explains to a detainee with a pending disciplinary proceeding what a staff representative can do to assist in those proceedings. *Id.* All three notices indicate that Chavez Flores refused to sign the section acknowledging that he received a copy of the forms. *See* Exhibits A, B and C. Because the UDC hearing was scheduled for 11:00a.m. on February 12, 2018 and the notice for the IDP hearing indicates it was

DECLARATION OF TIM PETRIE
Case No. 18-5139-BHS-DWC - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

served on Chavez Flores at that same date and time, ICE had no reason to believe that Chavez Flores was not present at the UDC hearing or that he did not have notice of the IDP hearing. Because the Notice of Detainee Rights and Notice of Staff Representative Duties indicate they were served on the same date in Chavez Flores' native language, ICE had no reason to believe that Chavez Flores did not have notice of his rights in the IDP hearing.

11. Chavez Flores attended the IDP hearing on February 14, 2018. It was held at the doorway of his detention cell in the administrative detention unit, Unit D3. Chavez Flores waived his right to a staff representative at the IDP hearing, but a certified interpreter was provided who interpreted the entire proceedings into Spanish. *See* Dkt #2-2, Exh. F at 7 (indicating the Spanish interpreter came from Lionbridge Interpretation Services and the interpreter's unique personal identification number was 725F5878).

12. I participated in the IDP hearing as a representative of ICE. In that role, I reviewed all relevant paperwork, including the Incident Report signed by GEO Officer Gordon, a true and correct copy of which was previously filed at Dkt. #22, Ex. H. In the Incident Report, Officer Gordon stated that while he was conducting bunk searches in two bunk areas, he found contraband in Chavez Flores' locked property box. Specifically, he found a bag with liquid and fermented fruit, emitting a strong odor. I had no reason to believe Officer Gordon was being untruthful in his signed Incident Report.

13. At the IDP hearing, Chavez Flores claimed that the contraband was not his, a claim detainees frequently make when they are alleged to have contraband to avoid discipline. *See* Dkt #2-2, Exh. F at 7. Chavez Flores also requested that the guards review video footage to determine if a third party placed the contraband in his box. *Id.* However, Chavez Flores could not point to any specific date or time when he suspected his locked property box could have been

DECLARATION OF TIM PETRIE
Case No. 18-5139-BHS-DWC - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

accessed. *Id.* Chavez Flores also did not request to present any witnesses at the IDP. Although Chavez Flores appears to now claim in this litigation that guards planted the contraband in his property box while he was sent to the medical unit, he did not make that claim during the IDP hearing. During the hearing, Chavez Flores did not allege that he failed to receive notice of the hearing or any paperwork related to the hearing, the infraction, or his placement in segregation.

14. Following the hearing, the IDP determined that Chavez Flores committed the infraction alleged because the items found in his locked property box were consistent with the charge of adulteration of food or drink. *Id.*

15. Appendix 3.1.A to the PBNDS states that detainees may be housed in disciplinary segregation for up to thirty days for the infraction of possessing adulterated food or drink, which is considered a "High" level offense.

16. I signed the Institution Disciplinary Panel Report as the ICE representative because I believed that based on all of the evidence, Chavez Flores had committed the infraction of possessing adulterated food or drink and that twenty days in disciplinary segregation was an appropriate penalty. A true and correct copy of that report was previously filed at Dkt. #2-2, Cho Declaration, Ex. F.

17. As a result of his infraction, Chavez Flores was issued twenty days disciplinary segregation. Chavez Flores was given credit for the days he spent in administrative segregation. GEO employees are responsible for giving a copy of the Disciplinary Segregation Order to the detainee. Chavez Flores was released from disciplinary segregation on March 1, 2018.

18. I had no desire or reason to retaliate against Chavez Flores for his decision to refuse meals. Inmates often refuse meals at NWDC for a variety of reasons, including lack of hunger,

DECLARATION OF TIM PETRIE
Case No. 18-5139-BHS-DWC - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the desire to lose weight, to make a point, or other reasons. I have never retaliated against any inmate for his or her decision to refuse meals.

\\

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 16th day of October, 2018.

*[signature]*

Tim Petrie
Supervisory Detention and Deportation Officer
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Tacoma, WA

DECLARATION OF TIM PETRIE
Case No. 18-5139-BHS-DWC - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970